# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3323

_____

United States of America,       *
                                         *

          Appellee,        *

                                       *   Appeal from the United States

         v.                   *   District Court for the

                                       *   Eastern District of Missouri.

William A. Vinton,           *

                                       *

          Appellant.       *

_____

Submitted:  September 21, 2010
Filed:  January 6, 2011

_____

Before RILEY, Chief Judge, MELLOY and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

William Vinton pleaded guilty to two firearms offenses.  The district court[1] sentenced him within the advisory range to a term of 84 months' imprisonment.  On appeal, Vinton challenges the district court's denial of his motion to suppress evidence and the sentence imposed.  We affirm.

_____

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

## I.

On December 18, 2007, police in St. Louis County, Missouri, received a report that two men had burglarized a local home and stolen a gun safe with four firearms inside. A witness at the crime scene identified David Lee as one of the perpetrators. The police quickly learned that Lee had been seen earlier that day at a house belonging to Vinton. That evening, three officers arrived at Vinton's house and knocked on the door. One of the officers, Detective Andrew Brown, testified that Vinton came to the door and told him that Lee had left the house about an hour earlier. According to Brown, Vinton then agreed that the officers could enter the home to search for Lee.

After the officers had entered the house, Brown continued to question Vinton about Lee's whereabouts while another officer searched for Lee. Two other men were sitting in Vinton's living room when the officers arrived, but police determined that they were not important to the investigation, and the men left the house shortly thereafter. Vinton asked Brown whether his investigation "had anything to do with the guns." When Brown responded that it did, Vinton said that he knew the guns did not belong to Lee. Brown asked where the guns were located, and Vinton stated that the guns were in a closet and the gun safe was in the basement. Vinton then gave Brown permission to seize the weapons and to search the house for other weapons and drugs. The officers located the stolen gun safe in the basement, and found three of the four stolen firearms in the upstairs bedroom closet. They also discovered a sawed-off shotgun on top of a dresser in the living room, and two ammunition cases in the living room.

The officers placed Vinton under arrest and transported him to an interview room at the police station. Brown advised Vinton of the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966), obtained a waiver of rights, and questioned Vinton. Vinton made incriminating statements.

A grand jury charged Vinton with unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1), and possession of an unregistered sawed-off shotgun, in violation of 26 U.S.C. § 5861(d). Vinton moved to suppress the evidence seized during the search and the statements he made at the house and during the interview at the police station. At the evidentiary hearing, the government relied primarily on testimony from Detective Brown. Vinton introduced testimony from Daniel Berry, who stated that he was one of the individuals sitting in Vinton's living room when the officers arrived. Berry claimed that Vinton had initially refused the officers' request to enter the house, but that the officers nonetheless had forced their way inside. Vinton also relied on the testimony of a defense investigator named Amy Skrien, who recounted her conversation with an individual named "Taz." According to Skrien, Taz refused to give his full name or meet with her in person, but claimed during telephone conversations that he was present on the night in question and saw the officers enter Vinton's house without asking for permission. The government also presented evidence concerning Vinton's interrogation at the police station, including a signed *Miranda* waiver form and a videotape.[2]

The magistrate judge credited Brown's testimony, declined to credit the statements of Berry or Taz, and recommended that the motion to suppress be denied. Conducting a *de novo* review of the magistrate's recommendation, the district court also credited Brown's testimony and expressly declined to credit the testimony of

---

[2]Shortly before oral argument, the government moved for leave to file out of time a motion to include certain exhibits from the pretrial hearing in the record on appeal pursuant to Eighth Circuit Rule 10A. By federal rule, the original exhibits filed in the district court are included in the record on appeal. Fed. R. App. P. 10(a)(1). Insofar as the motions seek permission to carry out the duty of the parties to transmit the exhibits to the clerk of this court, *see* 8th Cir. R. 10A; *Osborne v. Purkett*, 411 F.3d 911, 915 n.3 (8th Cir. 2005), the motions are granted.

Berry or the hearsay statements of Taz. The district court adopted the magistrate's recommendation and denied the motion to suppress.

Vinton pleaded guilty to both counts of the indictment. At sentencing, the government argued that Vinton's prior Missouri conviction for second-degree assault, *see* Mo. Rev. Stat. § 565.060, was a "crime of violence" that warranted a greater base offense level under USSG § 2K2.1(a)(3). The district court agreed and determined Vinton's advisory guideline sentencing range was 84 to 105 months. The court sentenced Vinton to 84 months' imprisonment, to be followed by two years of supervised release.

II.

Vinton contends that the district court erred in denying his motion to suppress. He argues that his pre-arrest statements to the police were involuntary and obtained in violation of *Miranda*, that he did not voluntarily consent to a search of his house, and that his statements at the police station were involuntary and obtained after an invalid waiver of his *Miranda* rights. We conclude that each of these arguments is without merit.

Vinton claims that his pre-arrest statements should be suppressed because the police had not yet read him the *Miranda* warnings when he made the statements. *Miranda* requires that law enforcement agents provide certain warnings before they conduct an interrogation of an individual who is in custody. Vinton contends that he was in custody when the police questioned him about the whereabouts of David Lee and the guns, and that he was thus entitled to receive the *Miranda* warnings before questioning.

We review *de novo* the district court's legal determination about whether a defendant was in custody, and we review the court's factual findings for clear error.

-4-

*United States v. Axsom*, 289 F.3d 496, 500 (8th Cir. 2002).  To determine whether an individual is in custody, a court must consider "whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam) (internal quotation omitted).  The custody inquiry turns on whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave or cause the agents to leave.  *United States v. New*, 491 F.3d 369, 373 (8th Cir. 2007).

The district court found that all the pre-arrest statements at issue were made during the roughly five-minute period after Vinton made contact with the officers at his front door.  The court found that Vinton made the statements in his own home, a location that is "'not indicative of the type of inherently coercive setting that normally accompanies a custodial interrogation.'" *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004) (quoting *United States v. Helmel*, 769 F.2d 1306, 1320 (8th Cir. 1985)); *see also Axsom*, 289 F.3d at 502; *United States v. Sutera*, 933 F.2d 641, 647 (8th Cir. 1991).  The court also found that Brown and Vinton were alone in Vinton's kitchen during the questioning, and that the police had not restrained, threatened, or coerced Vinton.  These findings were not clearly erroneous and were amply supported by Brown's testimony, which the district court credited.  Based on the totality of the circumstances, we agree with the district court that Vinton was not in custody, because a reasonable person in Vinton's position would have felt at liberty to terminate the interrogation and ask the officers to leave.

Vinton asserts that the district court erred in concluding that Brown's testimony was credible and that the accounts offered by Berry and Taz were not credible.  He asks us to conclude that he was in custody based on the statements of Berry and Taz that the officers entered the house without permission.  The district court, however, has a "distinct advantage" in evaluating the credibility of witnesses, and its credibility determinations are "virtually unreviewable on appeal." *United States v. Ralph*, 480

F.3d 888, 890 (8th Cir. 2007) (internal quotation omitted). The district court reasonably found that Berry's testimony was inconsistent in several respects, that Berry lied to the police about his identity, and that Berry's account of the officers' entry was inconsistent with Taz's hearsay statements. The court further determined that Taz's refusal to identify himself, to meet with the defense investigator in person, or to testify weighed against a finding of credibility. We see no basis to disturb the district court's findings.

We also conclude that Vinton's pre-arrest statements were voluntary. We review *de novo* the district court's determination that a statement to the police was voluntary, and we review the district court's related findings of fact for clear error. *United States v. Eldeeb*, 20 F.3d 841, 842 (8th Cir. 1994). Statements to law enforcement authorities are voluntary if they are "'the product of an essentially free and unconstrained choice by [their] maker.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)). A statement is not considered involuntary unless "the police extorted it from the accused by means of coercive activity." *Jenner v. Smith*, 982 F.2d 329, 333 (8th Cir. 1993) (internal quotation omitted). There is no credible evidence that the police coerced Vinton into making the statements, or that his decision to speak with them was the product of anything other than a free and unconstrained choice.

Vinton contends that his pre-arrest statements to the police necessarily were involuntary, because he has a history of drug abuse and a "borderline I.Q." The district court found that Vinton was rational when he spoke with the officers, and credited Brown's testimony that Vinton was coherent and did not appear to be under the influence of drugs at the time. The court also noted that Vinton had previous confrontations with law enforcement and had been convicted of multiple felony offenses. The record supported these findings. Testimony at the evidentiary hearing established that Vinton had been arrested on numerous occasions, and was familiar with his constitutional rights. A history of interaction with the criminal justice system

supports an inference that an interviewee is familiar with his constitutional rights and that his statements to the police are voluntary. *United States v. Griffith*, 533 F.3d 979, 984-85 (8th Cir. 2008). Although lack of education and lower-than-average intelligence are factors in the voluntariness analysis, they do not dictate a finding of involuntariness, particularly when the suspect is clearly intelligent enough to understand his constitutional rights. *United States v. Makes Room*, 49 F.3d 410, 415 (8th Cir. 1995). We therefore conclude that the district court did not err in its determination that Vinton's statements were voluntary.

Vinton next claims that he did not voluntarily consent to the search of his house. We review for clear error a district court's finding that a search was authorized by voluntary consent. *United States v. Willie*, 462 F.3d 892, 896 (8th Cir. 2006). The government bears the burden of proving by a preponderance of the evidence that consent to search was voluntary. *United States v. Arciniega*, 569 F.3d 394, 398 (8th Cir. 2009). "Whether an individual's consent is voluntary is a question of fact that must be determined from the totality of the circumstances." *Id.*; *see also Schneckloth*, 412 U.S. at 248-49. The "ultimate question" is whether the individual's "'will ha[s] been overborne and his capacity for self-determination critically impaired,'" such that his consent to search must have been involuntary. *Willie*, 462 F.3d at 896 (quoting *United States v. Watson*, 423 U.S. 411, 424 (1976)).

We find no clear error in the district court's finding that Vinton twice gave voluntary consent – first to allow police to search the house for David Lee, and then to permit a search of the house for weapons and other contraband. The district found that the officers did not raise their voices, draw their guns, or otherwise threaten or coerce Vinton. The court determined that Vinton was unrestrained and rational when he consented to the searches, that he had a history of interaction with law enforcement, and that his consent to the search of the house for contraband was obtained after a five-minute conversation with a single officer in Vinton's own home. These findings are well supported in the record, and there was thus a sufficient basis

for the district court's determination that Vinton voluntarily consented to both searches.

Finally, we address Vinton's contention that his statements during his interview at the police station must be suppressed. Vinton argues that the statements are inadmissible because his *Miranda* waiver was not voluntary, knowing, and intelligent. There are "two distinct dimensions" to the inquiry whether a suspect's waiver of his *Miranda* rights was voluntary, knowing, and intelligent. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). First, the waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* Second, the suspect must have waived his rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* We consider the totality of the circumstances in determining whether a suspect's waiver is valid. *Id.* We review the district court's legal conclusion that the suspect validly waived his *Miranda* rights *de novo* and its factual findings underlying that conclusion for clear error. *United States v. Turner*, 157 F.3d 552, 554-55 (8th Cir. 1998).

We conclude that Vinton's waiver was valid. There is no showing that Vinton was intimidated, coerced, or threatened by the police prior to or during his interview at the police station. Vinton contends, however, that he has mental impairments so severe that his waiver could not have been voluntary, knowing, and intelligent. In particular, Vinton asserts that because he stated at the beginning of the interview that he could not read or write, he necessarily lacked the ability to understand and voluntarily waive his rights. Even if a suspect has a somewhat diminished capacity to resist coercion due to a mental defect, however, a *Miranda* waiver will not be invalidated on that basis if there is no evidence of police coercion. *Makes Room*, 49 F.3d at 415.

Vinton also argues that Brown misrepresented the nature of the waiver form when he told Vinton at the police station, "[T]his is a waiver of the rights. . . . This just means that I'd like to ask you questions, okay." But the district court here properly considered the totality of the circumstances, including Vinton's previous interactions with law enforcement, in support of its finding that Vinton's *Miranda* waiver was voluntary, knowing, and intelligent. Brown testified that he read the waiver form out loud to Vinton, that Vinton indicated that he understood and waived his *Miranda* rights, and that Vinton signed, initialed, and dated a *Miranda* waiver form during the interview at the police station. On this record, we conclude that Vinton's waiver was voluntary, knowing, and intelligent.

Vinton asserts finally that even if his *Miranda* waiver was valid, the statements he made during the interview were involuntary. "[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare." *Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984). For the reasons discussed above, we conclude that Vinton's argument is without merit.

III.

Vinton argues that the district court erred in concluding that his prior state conviction for second-degree assault was a crime of violence that warranted an increase in his base offense level under the advisory sentencing guidelines. We review the district court's interpretation and application of the guidelines *de novo*. *United States v. Gallimore*, 491 F.3d 871, 874-75 (8th Cir. 2007).

The guideline applicable to Vinton's firearms offenses is USSG § 2K2.1. The guideline provides for a heightened base offense level of 22 if the offense involved certain classes of firearms and the defendant committed the offense after sustaining a felony conviction for a crime of violence or controlled substance offense. USSG §

2K2.1(a)(3). The commentary to § 2K2.1 states that the term "crime of violence" has the meaning given in USSG § 4B1.2(a) and its commentary. USSG § 2K2.1, comment. (n.1). Chapter 4, in turn, defines a crime of violence as any state or federal offense, punishable by imprisonment for a term exceeding one year, that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

USSG § 4B1.2(a).

To determine whether a previous conviction is a crime of violence under § 4B1.2(a), we often have looked to the case law interpreting 18 U.S.C. § 924(e)(2)(B), a provision of the Armed Career Criminal Act (ACCA) that defines the term "violent felony" using similar language. *See United States v. Williams*, No. 10-1287, 2010 WL 5071397, at *3 n.1 (8th Cir. Dec. 14, 2010). Although we have observed that the guideline and the statute may not always be interpreted in the same way, *United States v. Ross*, 613 F.3d 805, 809-10 (8th Cir. 2010); *see James v. United States*, 550 U.S. 192, 207 (2007), the cases interpreting § 924(e)(2)(B) can be instructive with respect to § 4B1.2(a), given the similar structure and wording of the two provisions.

We apply the "categorical approach" articulated by the Supreme Court in its cases interpreting § 924(e)(2)(B) to determine whether a prior conviction was for a crime of violence under § 4B1.2(a). *Williams*, 2010 WL 5071397, at *2; *see Taylor v. United States*, 495 U.S. 575, 600 (1990). Under this approach, the sentencing court is "generally prohibit[ed] . . . from delving into particular facts disclosed by the record of conviction, thus leaving the court normally to 'look only to the fact of conviction

-10-

and the statutory definition of the prior offense.'" *Shepard v. United States*, 544 U.S. 13, 17 (2005) (quoting *Taylor*, 495 U.S. at 602); *see also James*, 550 U.S. at 202. When a statute of conviction encompasses several different crimes, some of which qualify as crimes of violence and some of which do not, we may use a "modified categorical approach" to determine which part of the statute was the basis for conviction. *United States v. Furqueron*, 605 F.3d 612, 614 (8th Cir. 2010); *see Johnson v. United States*, 130 S. Ct. 1265, 1273 (2010). Under the modified categorical approach, a court may examine the trial record, including charging documents, jury instructions, written plea agreements, transcripts of plea colloquies, and findings of fact and conclusions of law from a bench trial. *Shepard*, 544 U.S. at 20.

At the time of Vinton's state conviction, Missouri law provided that second-degree assault was a class C felony carrying a maximum term of imprisonment of seven years. *See* Mo. Rev. Stat. § 565.060.3; *State v. Williams*, 844 S.W.2d 562, 563 (Mo. Ct. App. 1992) (describing the penalty for a class C felony). At the time, Missouri's second-degree assault statute, Mo. Rev. Stat. § 565.060.1, provided:

> A person commits the crime of assault in the second degree if he:
>
> (1) Attempts to kill or knowingly causes or attempts to cause serious physical injury to another person under the influence of sudden passion arising out of adequate cause; or
>
> (2) Attempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument; or
>
> (3) Recklessly causes serious physical injury to another person; or
>
> (4) While in an intoxicated condition or under the influence of controlled substances or drugs, operates a motor vehicle in this state and, when so

operating, acts with criminal negligence to cause physical injury to any other person than himself.

To ascertain which part of the statute served as the basis for Vinton's conviction, we look to the judicial record using the modified categorical approach. Because Vinton pleaded guilty, we may look to the charging instrument, the judge's formal rulings of law and findings of fact, the transcript of the plea colloquy, and the plea agreement, in order to determine whether the plea "necessarily" rested on the subpart of the statute that constituted a crime of violence. *Shepard*, 544 U.S. at 20-21.

We conclude that the charging document establishes the offense of conviction. In the information, the State alleged:

> That William A. Vinton, Jr., in violation of Section 565.060 RSMo., committed the class C felony of assault in the second degree . . . in that, on or about Friday, May 29, 1992, at approximately 6:30 p.m. . . . William A. Vinton, Jr. *knowingly caused physical injury to Mary Reiners by means of a dangerous instrument*, to-wit: a motor vehicle.

(R. at 85 (emphasis added)). The charging instrument precisely tracks the language of § 565.060.1(2), thus establishing that Vinton was convicted of committing second-degree assault by knowingly causing physical injury to another by means of a dangerous instrument.

We further conclude that second-degree assault, under the second subsection, is a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another," USSG § 4B1.2(a)(1), and that it is therefore a "crime of violence." In *Johnson v. United States*, the Supreme Court held that the term "physical force," as used in 18 U.S.C. § 924(e)(2)(B)(i), means "*violent* force – that is, force capable of causing physical pain or injury to another person." *Johnson*, 130 S. Ct. at 1271. The Court reasoned that the words "physical force" must be

-12-

interpreted in the context of a statute concerning "violent" felonies, so that the force required must be "substantial." *Id.* Because § 4B1.2(a)(1) uses the term "physical force" in the comparable context of "crimes of violence," a similar interpretation of the term "physical force" in § 4B1.2(a)(1) is appropriate. *See United States v. Sampson*, 606 F.3d 505, 511 (8th Cir. 2010). Here, a conviction under § 565.060.1(2) requires a showing that the defendant attempted to cause, or knowingly caused, physical injury to another person. A violation of the second subsection of the Missouri assault statute thus constitutes a crime of violence, because it has, as an element, the actual or attempted use of violent physical force against another.

Vinton argues that there is insufficient basis to determine that he was convicted under the second subsection of the Missouri statute, because he pleaded guilty without expressly admitting guilt, pursuant to the procedure discussed in *North Carolina v. Alford*, 400 U.S. 25 (1970). Vinton asserts that because he entered an *Alford* plea, he never admitted that he was guilty of the state second-degree assault charge, and that the charging document is insufficient to demonstrate which subsection of the Missouri statute was the basis of the conviction.

Vinton's position is unavailing, because the increase in base offense level depends on a *conviction* for a crime of violence, not on an express admission of guilt. *See* USSG § 2K2.1(a)(3)(B). It is well-established that "an *Alford* plea, like other guilty pleas, results in a conviction," and we have said that *Alford* pleas "are indistinguishable from other guilty pleas" in the analogous context of § 924(e)(2)(B). *United States v. Salean*, 583 F.3d 1059, 1061 n.3 (8th Cir. 2009). For purposes of § 2K2.1(a)(3)(B), it is not important whether the previous conviction was the result of a traditional guilty plea, an *Alford* plea, or conviction by a judge or jury; what matters is the fact of the conviction itself.

Vinton is also mistaken that the absence of an admission of guilt precludes application of the modified categorical approach to determine that he was convicted

-13-

under the second subsection of the Missouri second-degree assault statute. In *Shepard v. United States*, the Supreme Court stated that the modified categorical approach requires that courts determine, based on the trial record, whether the defendant's plea "had necessarily rested on" the provision of the offense constituting a violent felony under § 924(e)(2)(B). *Shepard*, 544 U.S. at 20-21 (internal quotation omitted). The Court noted that while courts could look to a plea colloquy to make that determination, "the details of a generically limited charging document *would do in any sort of case*." *Id.* at 21 (emphasis added). A precisely drawn charging document can indicate the basis for conviction whether or not the conviction was accompanied by an admission of guilt.

Vinton cites *United States v. Alston*, 611 F.3d 219 (4th Cir. 2010), for the proposition that a conviction resulting from an *Alford* plea cannot qualify as a prior conviction for a crime of violence, but he misreads the holding of that case. *Alston* involved an appeal of a district court's decision to enhance a defendant's sentence pursuant to the ACCA based on prior convictions. The conviction in dispute resulted from the defendant's *Alford* plea to a charge under Maryland's second-degree assault statute, which encompassed some crimes that qualified as violent felonies, and others that did not. *Alston*, 611 F.3d at 220. Relying solely on a transcript of the prosecution's proffer of a factual basis for the *Alford* plea, the district court concluded that the conviction was for a violent felony under 18 U.S.C. § 924(e). *Id.* at 221-22. The Fourth Circuit vacated the sentence and remanded, concluding that the government's proffer of a factual basis for an *Alford* plea did not amount to an acceptance or admission of those facts by the defendant, and that the record did not establish that the defendant's conviction necessarily came under a particular subsection of the statute. *Id.* at 226.

The district court in this case did not rely on a proffer during the *Alford* plea hearing to establish which subsection of the Missouri second-degree assault statute served as the basis for Vinton's prior conviction. Instead, the court relied on a

-14-

precisely drawn charging document, which narrowed the charge to a crime that qualifies as a predicate offense. *Alston* recognized that such a charging document is one of the "conclusive judicial records" that can establish the basis for a defendant's conviction under an overinclusive statute. *Id.*

The charging document establishes that Vinton's conviction for second-degree assault was a crime of violence within the meaning of § 4B1.2(a)(1). The district court therefore properly determined that Vinton qualified for a heightened base offense level under § 2K2.1(a)(3).

IV.

Vinton asserts that the district court committed other procedural errors at sentencing by considering the wrong guidelines range, basing its sentence on erroneous facts, and failing adequately to explain the sentence. After a thorough review of the record, we find no procedural error. The district court did not base its sentence on an improper guideline range or irrelevant facts, and it provided a sufficient explanation of the reasons for its sentencing decision. A sentencing court is not required to recite each of the 18 U.S.C. § 3553(a) factors when determining a sentence; it is sufficient that the district court makes clear that it actually considered the § 3553(a) factors. *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc).

Vinton also contends that the sentence of 84 months' imprisonment is substantively unreasonable. We review the reasonableness of the sentence under a deferential abuse-of-discretion standard, *Gall v. United States*, 552 U.S. 38, 51 (2007); *Feemster*, 572 F.3d at 461, and we accord a presumption of reasonableness to a sentence within the advisory guideline range. *Rita v. United States*, 551 U.S. 338, 341 (2007); *United States v. Lincoln*, 413 F.3d 716, 717-18 (8th Cir. 2005). The court

sentenced Vinton at the bottom of the advisory range, and we see no compelling circumstances that demonstrate an abuse of the district court's wide discretion.

\* \* \*

The judgment of the district court is affirmed.

_____

-16-