# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2390
_____

United States of America,

*Plaintiff - Appellant*,

v.

James Potter Williams,

*Defendant - Appellee*.
_____

Appeal from United States District Court
for the District of Minnesota - St. Paul
_____

Submitted: March 14, 2014
Filed: July 25, 2014
_____

Before COLLOTON, SHEPHERD, and KELLY, Circuit Judges.
_____

COLLOTON, Circuit Judge.

The United States appeals the district court's suppression of statements and evidence gathered during the search of the home and car of James Williams. We reverse.

# I.

Williams was charged with two counts of receipt and one count of possession of child pornography following a federal investigation into online purchasing of child pornography. Williams moved to suppress evidence found in searches of his home, car, and workplace, as well as statements he made to federal agents. After the hearing on the motion to suppress, the district court made findings of fact that neither party argues are clearly erroneous. We recount them before engaging in the relevant legal analysis.

After Immigration and Customs Enforcement agents identified Williams as a possible purchaser of child pornography, about seven armed and uniformed agents executed a search warrant at his home. When no one answered their knock, the agents used a battering ram to enter. Williams arrived at his home while the search was ongoing, and one of the agents showed him the search warrant and told him that the agents had found incriminating evidence.

The agent asked Williams whether he would consent to speak with the agent and answer some questions. The agent told Williams that he was not under arrest, and that the decision whether to speak with law enforcement was voluntary. Williams agreed to speak with the agent and to answer questions.

The agent sat with Williams in his living room, ten to fifteen feet from the door, and questioned him for thirty to forty-five minutes. The agent did not raise his voice, make any threats or promises, or use deception. Williams was not restrained during the interview, and the agent told him he could use the restroom or get a glass of water. At one point, Williams did leave the discussion to get water. Williams spoke clearly and appeared to understand what was happening in his interactions with the agents. At the end of the interview, Williams was not arrested.

During the interview, Williams admitted to accessing child pornography websites from his home computer and work laptop, and told the officers that the laptop was in his car, which was parked outside. The agent asked for permission to search the car and recover the laptop. Williams asked the agent some questions and then signed a consent form for the search. Agents located Williams's work laptop in the car, seized the laptop, and later obtained a search warrant for the contents of that computer.

The district court, adopting an opinion of a magistrate judge, determined that Williams was in custody for purposes of *Miranda v. Arizona*, 384 U.S. 436 (1966), and suppressed his statements and the laptop. The court reasoned that "because of the force used to enter his home and the number of armed agents found in and around his house, Williams reasonably may not have felt free to end the interview and leave." The court also observed that Williams could not ask the officers to leave, because they were executing a search warrant. The court concluded that "the interrogation was so police-dominated that Williams was 'deprived of his freedom of action,' and would not have felt free to terminate the interrogation and leave." The court further concluded that whether or not Williams was in custody, his statements and consent to search were involuntary because of the force used to enter the home, the presence of armed agents executing a search warrant, and the "inherently coercive" interview. For these reasons, the court suppressed Williams's statements and the laptop.

The government appeals, arguing that the court erred in determining that Williams was in custody and that his statements and consent were involuntary. In reviewing the district court's grant of Williams's motion to suppress, we review its conclusions of law *de novo* and its findings of fact for clear error.

II.

The "ultimate question in determining whether a person is in 'custody' for purposes of *Miranda* is 'whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). To answer that question, we consider the totality of the circumstances that confronted the defendant at the time of questioning, and inquire whether a reasonable person would have felt that he or she was free to terminate the interview and leave. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). Several considerations lead us to conclude that Williams was not in custody.

First, when the agent asked Williams if he would agree to answer some questions, he told Williams that the decision was voluntary and that he was not under arrest. "We have long regarded these admonitions as weighty in the custody analysis. And we have never held that a person was in custody after receiving them." *United States v. Perrin*, 659 F.3d 718, 721 (8th Cir. 2011) (internal citation omitted). "The most obvious and effective means of demonstrating that a suspect has not been taken into custody . . . is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will." *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990) (internal quotation omitted). Advice that a suspect is not under arrest, and that his participation in questioning is voluntary, is highly probative of whether a reasonable person would feel that he may terminate the interview and leave. *Czichray*, 378 F.3d at 826.

Second, Williams was questioned in the living room of his home, approximately ten to fifteen feet from the front door. "When a person is questioned 'on his own turf,' *United States v. Rorex*, 737 F.2d 753, 756 (8th Cir. 1984), we have observed repeatedly that the surroundings are 'not indicative of the type of inherently coercive setting that normally accompanies a custodial interrogation.' *United States*

-4-

*v. Helmel*, 769 F.2d 1306, 1320 (8th Cir. 1985)." *Czichray*, 378 F.3d at 826. *Miranda* itself, surveying police manuals of the time, juxtaposed the police station, where "the investigator possesses all the advantages," with a suspect's "own home," where "he may be confident, indignant, or recalcitrant, . . . more keenly aware of his rights and more reluctant to tell of his indiscretions and criminal behavior within the walls of his home." 384 U.S. at 449-50 (internal quotations omitted). The physical location of this interview—in familiar surroundings and close to the exit—did not serve to isolate Williams in a coercive setting.

Third, the conduct of the interview did not bring about a restraint on freedom of movement of the degree associated with formal arrest. Williams was not physically restrained or handcuffed. He was permitted to get a glass of water and to move unsupervised through his home. *Cf. United States v. Axsom*, 289 F.3d 496, 501 (8th Cir. 2002) (concluding that suspect was not in custody even though agents escorted him to dress and use the bathroom and refused to let him get his own glass of water). Williams was questioned by only a single agent for a relatively short period of thirty to forty-five minutes. The agent used no deceptive strategies or threats. At the end of the interview, Williams was not arrested, and the agents departed the residence.

In concluding that Williams was in custody, the district court relied heavily on the "police-dominated" environment resulting from execution of the search warrant, during which entry was forced and seven armed agents occupied the home. The district court gave too much weight to this factor: "Any warrant search is inherently police dominated; there is nothing untoward about that circumstance." *Perrin*, 659 F.3d at 721. Searching investigators typically come armed and in groups of sufficient number to ensure officer safety. Force is used to enter when no resident is present or the occupants refuse to answer after a knock and announcement. To accept Williams's contention here would come close to mandating that *Miranda* warnings accompany any questioning conducted during execution of a search warrant. But

*Miranda* applies only when the circumstances approximate a formal arrest, and execution of a search warrant is not an arrest. Police inevitably "dominate" the atmosphere in some sense while they are conducting a search. But a reasonable resident who is unrestrained near the front door in the living room of his home, and who is advised that there is no arrest and that participation in any interview is voluntary, should know that he is free to leave or to terminate questioning. Under the totality of the circumstances, Williams was not in custody.

The district court also ruled that Williams's statements to the agent and his consent to search were not voluntary. Statements and consent are involuntary where an individual's will is overborne by coercive police activity and he loses the capacity for self-determination. *See United States v. Vinton*, 631 F.3d 476, 482 (8th Cir. 2011); *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (en banc). The district court suppressed Williams's inculpatory statements and fruits of the search on that alternative basis.

"[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). "A statement is not considered involuntary unless the police extorted it from the accused by means of coercive activity." *Vinton*, 631 F.3d at 482. The district court's conclusion on voluntariness, however, was premised on its erroneous determination that Williams was subjected to a coercive custodial interrogation. The court reasoned that "the interrogation was custodial, inherently coercive, and sufficient to cause Williams's will to be overborne." But Williams was not in custody, and a "police-dominated" atmosphere arising from the execution of a search warrant by a group of armed agents likewise is not sufficient to establish an overborne will. *Cf. United States v. Aldridge*, 664 F.3d 705, 713 (8th Cir. 2011).

The agent who interviewed Williams and requested his consent to search did not make threats or promises, use deceptive tactics, or even raise his voice. The district court found that Williams spoke clearly, was coherent, and appeared to understand what was happening. Shorn of the erroneous legal conclusion about custody, the record establishes that Williams's statements and consent were voluntary.

\*     \*     \*

The order of the district court suppressing evidence is reversed.

_____