# United States Court of Appeals

## For the Eighth Circuit

_____

No. 19-2635
_____

United States of America

*Plaintiff - Appellee*

v.

Jonathan Figueroa-Serrano

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Aberdeen

_____

Submitted: June 19, 2020
Filed: August 21, 2020

_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.

_____

KELLY, Circuit Judge.

Jonathan Figueroa-Serrano conditionally pleaded guilty to possessing a firearm as a noncitizen unlawfully present in the United States, see 18 U.S.C. § 922(g)(5),

reserving his right to appeal the district court's[1] denial of his suppression motion. He argues the district court erred by declining to suppress evidence of a gun seized without a warrant during a traffic stop, as well as his subsequent statements to law enforcement. Because we find no reversible error, we affirm.

## I.

At about 1:45 a.m. on January 21, 2018, Officer Michael Morgan of the Milbank, South Dakota Police Department stopped a car without an illuminated license plate, in violation of state law.[2] The car's driver, Figueroa-Serrano, was the only person inside. Morgan smelled burnt marijuana emanating from the car. He also noticed that Figueroa-Serrano's eyes were red, which Morgan identified as a possible sign of intoxication. Morgan then ran a records check and discovered that Figueroa-Serrano's driver's license had been canceled.

Grant County Sheriff's Deputy Mark Leusink soon arrived on the scene. He and Morgan searched the car based on the smell of marijuana. During the search, Morgan found a gym bag behind the driver's seat that contained a burnt marijuana cigarette, several containers of concentrated marijuana wax, a pipe with marijuana residue, and other drug paraphernalia, including a glass dragon, a grinder, and a torch. Meanwhile, Leusink found a bag labeled "Sig" behind the front passenger seat containing a Sig Sauer 9 mm firearm and ammunition. The officers subsequently seized the gun and marijuana and arrested Figueroa-Serrano. Then, without providing Miranda warnings, Morgan asked whether Figueroa-Serrano had anything "illegal" in his pockets. Figueroa-Serrano replied that he had an "e-cig pen" that he

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

[2]The dashboard camera in Morgan's squad car recorded the traffic stop.

used to smoke marijuana. Morgan also asked whether Figueroa-Serrano had smoked marijuana within the last hour, and Figueroa-Serrano admitted that he had.

Morgan began driving Figueroa-Serrano to jail. At some point, Figueroa-Serrano volunteered the word "wax," which led Morgan to ask, "What do they do with wax?" Figueroa-Serrano told the officer how marijuana wax is made. Later, Morgan asked whether he had ever previously received Miranda warnings. Figueroa-Serrano stated that he had, and Morgan proceeded to give the warnings. Figueroa-Serrano affirmed that he understood his rights and the two then engaged in "small talk" until Figueroa-Serrano asked about the gun. Morgan explained that he seized the gun because Figueroa-Serrano would be charged with possession of a controlled substance.

At approximately 3:05 a.m., Morgan and Leusink began questioning Figueroa-Serrano at the jail. This was nearly one hour after Morgan gave the Miranda warnings. Though Leusink did not repeat the warnings, he reminded Figueroa-Serrano of the earlier warnings and asked whether he had questions about his rights. Figueroa-Serrano said he did not. Leusink then asked whether he would talk with the officers, and Figueroa-Serrano agreed to do so. He went on to make statements about the marijuana, the gun, and his immigration status, including that he was born in Mexico and entered the United States without inspection with his family when he was five years old.

Figueroa-Serrano was later transferred to immigration custody at the Nobles County Jail in Minnesota. On February 22, 2018, about one month after his arrest, a guard at the jail summoned him to a phone call with Special Agent Craig Scherer from the Department of Homeland Security. At the start of the call, Scherer read Figueroa-Serrano his Miranda rights, and Figueroa-Serrano acknowledged that he understood those rights. During the ten-minute interrogation, Figueroa-Serrano made additional admissions about the gun and his immigration status.

In March 2018, the federal grand jury in South Dakota returned a one-count indictment charging Figueroa-Serrano with possessing a firearm as a noncitizen unlawfully present in the United States. See 18 U.S.C. § 922(g)(5). Figueroa-Serrano filed a motion to suppress the gun seized without a warrant, as well as his statements to law enforcement. The magistrate judge conducted an evidentiary hearing and recommended that the motion be granted. The district court rejected this recommendation and denied Figueroa-Serrano's motion to suppress. The district court concluded that the plain-view exception to the warrant requirement justified the gun seizure and that Figueroa-Serrano's statements were admissible under Miranda. Figueroa-Serrano challenges these rulings on appeal.

## II.

On appeal from the district court's denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. United States v. Lewis, 864 F.3d 937, 941 (8th Cir. 2017). We will affirm unless the district court's decision "is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." Id. (cleaned up).

## A.

Figueroa-Serrano first argues that the district court should have suppressed evidence of the gun seized without a warrant during the traffic stop. "Generally, the Fourth Amendment requires that a warrant be issued by a neutral magistrate on probable cause before an item can be searched or seized." United States v. James, 353 F.3d 606, 613 (8th Cir. 2003). Under the plain-view exception to the warrant requirement, however, law enforcement may seize an object without a warrant if "(1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character

is immediately apparent, and (3) the officer has a lawful right of access to the object itself." United States v. Vinson, 805 F.3d 1150, 1152 (8th Cir. 2015) (quoting United States v. Collins, 321 F.3d 691, 694 (8th Cir. 2003)). "An item's incriminatory nature is immediately apparent if the officer at that moment had probable cause to associate the property with criminal activity." Lewis, 864 F.3d at 944 (cleaned up). As with all exceptions to the warrant requirement, it is the government's burden to prove that the plain-view doctrine applies. See James, 353 F.3d at 613.

The parties dispute only the second element of the plain-view doctrine: whether the gun's incriminating character was immediately apparent when Morgan and Leusink seized it. See Vinson, 805 F.3d at 1152. The government argues the officers had probable cause to believe Figueroa-Serrano possessed the gun in violation of 18 U.S.C. § 922(g)(3), which prohibits the possession of a firearm by "an unlawful user of . . . any controlled substance."[3]

"The term 'unlawful user' is not otherwise defined in the statute, but courts generally agree [that § 922(g)(3)] runs the risk of being unconstitutionally vague without a judicially-created temporal nexus between the gun possession and regular drug use." United States v. Turnbull, 349 F.3d 558, 561 (8th Cir. 2003), vacated, 543 U.S. 1099 (2005), reinstated, 414 F.3d 942 (8th Cir. 2005). Figueroa-Serrano argues that § 922(g)(3) could not justify the plain-view exception because the officers did not have evidence that he was a "regular" user of a controlled substance. See

---

[3]Section 922(g)(3) prohibits any person "who is an unlawful user of *or addicted to* any controlled substance" from possessing a firearm. 18 U.S.C. § 922(g)(3) (emphasis added). The government does not argue that officers had probable cause to believe Figueroa-Serrano possessed the gun as somebody who is "addicted to any controlled substance." See id. Instead, the government argues only that probable cause existed to suspect Figueroa-Serrano was "an unlawful user" of a controlled substance. See id. We therefore confine our analysis to that portion of the statute.

Turnbull, 349 F.3d at 561. He is correct that the officers did not know the *extent* of his drug use to prove that element at trial. But to seize the weapon, the officers did not need proof beyond a reasonable doubt that Figueroa-Serrano was an "unlawful user" of a controlled substance within the meaning of the statute. Instead, only probable cause was necessary. See Lewis, 864 F.3d at 944. This means the officers needed to be aware of facts establishing a "fair probability" that Figueroa-Serrano possessed the gun as an "unlawful user" of a controlled substance. See Illinois v. Gates, 462 U.S. 213, 238 (1983) (defining probable cause).

Based on the information the officers knew at the moment they seized the gun, they had probable cause to believe Figueroa-Serrano possessed the weapon in violation of § 922(g)(3). The officers had smelled burnt marijuana inside the car and noticed Figueroa-Serrano's eyes were red, which Morgan identified as a possible sign of marijuana intoxication. They also had discovered burnt marijuana and several containers of marijuana wax in the gym bag behind the driver's seat. The officers knew the possession of concentrated marijuana wax was a felony under state law. They found several other items associated with drug use, including a pipe, a glass dragon, a grinder, and a torch. Together, this evidence provided a "fair probability" that there was a "temporal nexus between the gun possession and regular drug use," as required by § 922(g)(3). See Turnbull, 349 F.3d at 561. Thus, at the moment they seized the gun, Morgan and Leusink had probable cause to believe Figueroa-Serrano possessed the gun in violation of that statute. See Lewis, 864 F.3d at 944.

Figueroa-Serrano alternatively argues that even if the officers had probable cause for a violation of § 922(g)(3), they could not seize the gun because, as state officers, they lacked authority to seize evidence of a federal crime. As Figueroa-Serrano concedes, this argument is foreclosed by our precedent. In United States v. Blom, 242 F.3d 799 (8th Cir. 2001), we decided that, under the plain-view doctrine, state officers could seize ammunition because they had probable cause to believe the suspect unlawfully possessed the ammunition as a convicted felon, even

though that crime was an exclusively federal offense.  Id. at 808; see also United States v. Varner, 481 F.3d 569, 573 (8th Cir. 2007) (applying the plain-view exception where a state officer seized ammunition based on probable cause to believe it was possessed by a felon who unlawfully used drugs).  Therefore, we conclude that the gun was properly seized because the officers had probable cause to believe Figueroa-Serrano possessed it in violation of § 922(g)(3).  The district court did not err by declining to suppress evidence of the gun.

**B.**

Figueroa-Serrano next argues that the district court should have suppressed three statements that he made to Officer Morgan on the night of his arrest.  After handcuffing Figueroa-Serrano, but without providing Miranda warnings, Morgan asked whether Figueroa-Serrano had anything "illegal" on him.  Figueroa-Serrano responded that he had an "e-cig pen" for smoking marijuana.  Morgan next asked whether he had smoked marijuana within the last hour, and Figueroa-Serrano acknowledged that he had.  Finally, on the way to the jail, Figueroa-Serrano volunteered something about "wax," and Morgan asked, "What do they do with wax?" Figueroa-Serrano replied by explaining how marijuana wax is made. Morgan provided Miranda warnings only after this discussion.

In the district court, Figueroa-Serrano argued that all three un-warned responses should be suppressed.  The government agreed that Figueroa-Serrano's third response—about how marijuana wax is made—should be suppressed, but it disagreed as to the other two statements.  Yet neither the magistrate judge nor the district court addressed Figueroa-Serrano's arguments about his two remaining un-warned statements.  On appeal, the government maintains that the district court properly declined to suppress these statements.

Miranda requires that officers provide warnings "before conducting an interrogation of a suspect who is in custody." United States v. Mshihiri, 816 F.3d 997, 1003–04 (8th Cir. 2016). An officer's "failure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained." Missouri v. Seibert, 542 U.S. 600, 608 (2004). However, we will not reverse if the district court's failure to suppress un-warned statements was harmless error. "The admission of statements obtained in violation of *Miranda* may constitute harmless error where there remains overwhelming independent evidence as to the defendant's guilt." United States v. Thomas, 664 F.3d 217, 223 (8th Cir. 2011) (quoting Chavez v. Weber, 497 F.3d 796, 805 (8th Cir. 2007)).

There is no dispute that Figueroa-Serrano was in "custody" at the relevant time: he was handcuffed and in the backseat of Morgan's squad car. And it is clear that Morgan's questions qualified as "interrogation." Morgan asked whether Figueroa-Serrano had anything "illegal" on him and when he had last smoked marijuana. These questions were "reasonably likely to elicit an incriminating response," and thus constituted interrogation. See Rhode Island v. Innis, 446 U.S. 291, 301 (1980). Because Morgan subjected Figueroa-Serrano to custodial interrogation without first giving Miranda warnings, the district court erred by failing to suppress Figueroa-Serrano's un-warned responses. See Seibert, 542 U.S. at 608.

This error was harmless, however, in light of the "overwhelming independent evidence" of Figueroa-Serrano's guilt. See Thomas, 664 F.3d at 223 (quoting Chavez, 497 F.3d at 805). Figueroa-Serrano's un-warned responses had no bearing on his guilt for the crime to which he pleaded guilty: possessing a firearm as a noncitizen unlawfully present in the United States. See 18 U.S.C. § 922(g)(5). His statements instead concerned only his marijuana use: he made no mention of his immigration status, nor did he discuss the gun found inside the car. While the district court should have suppressed Figueroa-Serrano's un-warned statements because they

-8-

were the product of custodial interrogation, this error was harmless.[4]  See Thomas, 664 F.3d at 223.

## C.

Figueroa-Serrano also contends that he did not validly waive his Miranda rights before Morgan and Leusink interrogated him at the jail on the night of his arrest.  In the interrogation room, Leusink reminded Figueroa-Serrano of Morgan's Miranda warnings, which had been given about an hour earlier.  Leusink asked Figueroa-Serrano if he had any questions about those warnings and whether he would talk with the officers.  Figueroa-Serrano said he had no questions and agreed to talk. He then made statements about the marijuana, the gun, and his immigration status. Figueroa-Serrano argues that the government failed to show that he knowingly and voluntarily waived his Miranda rights because Morgan "gave the advisory in a speed-recited, jumbled, difficult-to-understand manner," and the officers did not repeat the warnings at the jail even though they knew he had recently smoked marijuana.

There are "two distinct dimensions" to whether a suspect's waiver of his Miranda rights was voluntary, knowing, and intelligent.  Moran v. Burbine, 475 U.S. 412, 421 (1986).  First, the waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception."  Id.  Second, the suspect must have waived his rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  Id.  The government bears the burden of proving, by a

---

[4]Figueroa-Serrano expresses concern that the government may attempt to use these un-warned statements against him in a future criminal case.  We reach no conclusion about whether admission of the un-warned statements would be harmless in any case other than this one.

preponderance of the evidence, the validity of a <u>Miranda</u> waiver. <u>Colorado v. Connelly</u>, 479 U.S. 157, 169 (1986).

"We consider the totality of the circumstances in determining whether a suspect's waiver is valid." <u>United States v. Vinton</u>, 631 F.3d 476, 483 (8th Cir. 2011). We review de novo the district court's legal conclusion that the suspect validly waived his <u>Miranda</u> rights, and for clear error the factual findings underlying that conclusion. <u>Id.</u> Here, the magistrate judge found that Morgan provided <u>Miranda</u> warnings and that "nothing was done to overbear defendant's will or his capacity for self-determination. No threats . . . and no promises were made." The magistrate judge characterized all of Figueroa-Serrano's interactions with law enforcement as "more conversational than confrontational." The district court likewise found Figueroa-Serrano received proper <u>Miranda</u> warnings and had knowingly and voluntarily waived his rights before speaking with the officers.

First, the district court did not err by deciding that Figueroa-Serrano voluntarily waived his rights when he agreed to speak with Morgan and Leusink. There is no evidence that the officers used "intimidation, coercion, or deception" to obtain Figueroa-Serrano's waiver. <u>See id.</u> While Figueroa-Serrano notes that he was frisked during the booking process at the jail, under the circumstances, this routine procedure did not qualify as a deceptive or coercive police tactic.

Second, the district court did not err by deciding that Figueroa-Serrano knowingly waived his rights. Several factors counsel in favor of this conclusion. Figueroa-Serrano told Morgan that he previously had been read his <u>Miranda</u> rights, which increased his familiarity with the warnings. <u>See</u> <u>United States v. Adams</u>, 820 F.3d 317, 323–24 (8th Cir. 2016) (reasoning that a suspect's familiarity with <u>Miranda</u> warnings and police interrogations may support a knowing waiver). After Morgan gave the warnings, Figueroa-Serrano affirmed that he understood his rights. Later, when Leusink reminded Figueroa-Serrano of the warnings and asked whether he had

any questions about his rights, Figueroa-Serrano stated that he had none. Leusink then asked whether Figueroa-Serrano was willing to speak with the officers, and Figueroa-Serrano replied affirmatively.

Figueroa-Serrano's arguments to the contrary do not convince us that his waiver was unknowing. He has not shown that the district court clearly erred by finding that Morgan properly gave the Miranda warnings. Figueroa-Serrano's suggestion that Morgan spoke in a "speed-recited, jumbled, difficult-to-understand manner" is not supported by the record. Figueroa-Serrano himself told Morgan that he understood his rights after he received the warnings. Nor are we convinced that Figueroa-Serrano's marijuana consumption meant that his waiver was unknowing. He told Morgan he had a "pretty high" tolerance for marijuana, and Morgan testified that he did not notice any effects of intoxication apart from Figueroa-Serrano's red eyes. Moreover, Figueroa-Serrano answered all of the officers' questions in a timely and coherent manner. See United States v. Makes Room, 49 F.3d 410, 415 (8th Cir. 1995) (concluding that a statement was not involuntary or unknowing due to intoxication when effects of alcohol had worn off and defendant did not appear intoxicated). Finally, to the extent Figueroa-Serrano suggests that the one-hour gap between the warnings and interrogation means that he did not knowingly waive his rights, we have previously rejected an identical argument. See United States v. Ferrer-Montoya, 483 F.3d 565, 569–70 (8th Cir. 2007) (holding that a one-hour delay between Miranda warnings and questioning did not affect waiver because the defendant was in custody the entire time and there was no evidence of coercive police conduct). The district court did not err by denying Figueroa-Serrano's motion to suppress his statements to Leusink and Morgan.

## D.

Lastly, Figueroa argues that he did not knowingly and voluntarily waive his Miranda rights before speaking with Special Agent Scherer via telephone on February

22, 2018. Figueroa-Serrano alleges that a "uniformed guard" summoned him to the phone call with Scherer and that the guard stood nearby during the call and could hear Figueroa-Serrano's responses. Figueroa-Serrano testified at the suppression hearing that he was not sure whether he could refuse to participate in the telephone call.

We conclude that Figueroa-Serrano voluntarily waived his rights before speaking with Scherer. See Vinton, 631 F.3d at 483. As explained above, the magistrate judge found that "nothing was done to overbear defendant's will or his capacity for self-determination. No threats . . . and no promises were made." Figueroa-Serrano has not shown this finding is clearly erroneous. The guard's presence, by itself, does not establish coercion that would make Figueroa-Serrano's waiver involuntary. See United States v. Havlik, 710 F.3d 818, 822–23 (8th Cir. 2013) (holding that the presence of three officers and several "large dogs" was not enough to show an involuntary Miranda waiver). Furthermore, Scherer informed Figueroa-Serrano that he had the right to remain silent and could end the interview whenever he chose.

We also conclude that Figueroa-Serrano knowingly waived his rights before speaking with Scherer. See Vinton, 631 F.3d at 483. As the district court found, Scherer properly conveyed the Miranda warnings at the beginning of the telephone call. Scherer asked whether Figueroa-Serrano understood his rights, and Figueroa-Serrano affirmed that he did. Scherer then asked whether he had any questions about his rights. Figueroa-Serrano said that he had no questions, and proceeded to answer Scherer's questions. Figueroa-Serrano's testimony at the suppression hearing—that he did not understand the rights he waived by speaking to Scherer—does not overcome the record, which shows that Figueroa-Serrano promptly and coherently answered Scherer's questions and gave no reason for Scherer to believe that he did not understand the nature of the interrogation. Moreover, by the time Figueroa-Serrano spoke with Scherer, he had previously received Miranda warnings, and never indicated that he did not understand his rights. See Adams, 820 F.3d at 323–24.

-12-

Figueroa-Serrano attempts to analogize this case to <u>Tague v. Louisiana</u>, 444 U.S. 469 (1980) (per curiam), to argue that he did not knowingly waive his rights before speaking with Scherer. In <u>Tague</u>, the arresting officer testified "that he read petitioner his *Miranda* rights from a card, that he could not presently remember what those rights were, that he could not recall whether he asked petitioner whether he understood the rights as read to him," and that "he 'couldn't say yes or no' whether he rendered any tests to determine whether petitioner was literate or otherwise capable of understanding his rights." <u>Id.</u> at 469. The Court decided the petitioner's responses should have been suppressed because "*no evidence at all* was introduced to prove that petitioner knowingly and intelligently waived his rights before making the inculpatory statement." <u>Id.</u> at 471 (emphasis added).

This case is not like <u>Tague</u>. Here, the government submitted sufficient evidence to establish that Figueroa-Serrano knowingly waived his rights, including the full recording of Scherer's interrogation. Scherer clearly conveyed the <u>Miranda</u> warnings and asked whether Figueroa-Serrano understood his rights or had any questions about them. Figueroa-Serrano's responses indicate that he understood the nature of his waiver. Given this record, the government has demonstrated that Figueroa-Serrano knowingly waived his rights when he agreed to speak with Scherer. <u>See</u> <u>Connelly</u>, 479 U.S. at 169. The district court did not err by denying Figueroa-Serrano's motion to suppress.

For the foregoing reasons, we affirm the district court's judgment.

_____