# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1885

_____

United States of America,        *
                                         *

        Plaintiff - Appellee       *
                                         *    Appeal from the United States
    v.                                 *    District Court for the
                                         *    District of South Dakota.
Walter Perrin,                 *
                                         *

        Defendant - Appellant.     *

_____

Submitted: December 16, 2010
Filed: October 28, 2011(corrected November 1, 2011)

_____

Before LOKEN and BYE, Circuit Judges, and MARSHALL,[*] District Judge.

_____

MARSHALL, District Judge.

Walter Perrin admitted possessing child pornography. He made this admission in his bedroom under questioning by Craig Scherer, an agent with the Immigration and Customs Enforcement arm of the Department of Homeland Security. Agent Scherer led the team that executed a search warrant looking for child pornography at the small house in Sioux Falls where Perrin lived with his mother, five other people, and many computers. _United States v. Boll_, 635 F.3d 340 (8th Cir. 2011) is a

_____

[*]The Honorable D.P. Marshall Jr., United States District Judge for the Eastern District of Arkansas, sitting by designation.

companion case. After the District Court[**] denied Perrin's motion to suppress his statements to Agent Scherer, Perrin pleaded guilty, reserving the right to appeal the suppression ruling.

The issue is whether Perrin was in custody when he confessed to Agent Scherer. If so, Perrin's statements must be suppressed because the Agent gave Perrin no *Miranda* warnings before the questioning. *Miranda v. Arizona*, 384 U.S. 436 (1966). If not, then his statements come in and Perrin's conviction stands. We review the District Court's decision on custody—a mixed question of law and fact—*de novo*, and its factual findings for clear error. *United States v. LeBrun*, 363 F.3d 715, 719 (8th Cir. 2004) (*en banc*).

**1.** "The ultimate question in determining whether a person is in custody for purposes of *Miranda* is whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004), *cert. denied*, 544 U.S. 1060 (2005) (quotations omitted). Agent Scherer did not arrest Perrin before questioning him. So the question comes down to the situation's restraints. *E.g.*, *United States v. Lowen*, 647 F.3d 863, 867–68 (8th Cir. 2011). We consider "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave[ ]" the bedroom and the house. *J.D.B. v. North Carolina*, 131 S.Ct. 2394, 2402 (2011) (quotation omitted). We do not ask how Perrin perceived the situation; as the Supreme Court recently emphasized in *J.D.B.*, the point is how a reasonable person would have seen his options in the circumstances. *Ibid*.

---

[**]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

The District Court analyzed the custody issue through the non-exclusive *Griffin* factors, as modified by *Czichray* and later precedent. *United States v. Griffin*, 922 F.2d 1343 (8th Cir. 1990). The parties argue the case here the same way. With the caution that *Griffin* is simply a rubric for considering the ultimate issue, not a mandatory checklist, we move to the merits. The dispositive question remains: would a reasonable person in Perrin's circumstances have considered himself free not to answer Agent Scherer's questions and leave the premises?

**2.** Perrin does not assert clear error in any of the District Court's factual findings. We see none. Here, then, is what happened—"the circumstances surrounding [Perrin's] interrogation[.]" *Lowen*, 647 F.3d at 867 (quotation omitted).

After state investigators detected downloads of child pornography at the house where Perrin lived, federal agents got a warrant to search the premises. At least six officers in tactical gear entered the house, while several Sioux Falls police officers secured the perimeter. The search began around 1:45 in the afternoon. Agent Scherer led the group executing the warrant. Perrin and his mother were in the living room; another resident was in a bedroom. A fourth resident (Terry Boll of the related case) was leaving the house for work but came back inside at the officers' request. The officers had all four people stay in the living room with an armed officer. This small room was crowded with four residents, two officers, two dogs, and lots of furniture. After the premises were swept, Agent Scherer retrieved the warrant from his vehicle and gave it to Perrin's mother.

Agent Scherer told the group four things: the officers were looking for child pornography; the residents were free to leave; if anyone remained, he or she had to stay in the living room; and he wanted to ask questions but no one had to answer. The residents indicated as a group that they understood. Agent Scherer then began to ask about computers, access to them, and internet use. When he asked if anyone used Limewire, a file-sharing software often associated with child pornography,

-3-

Perrin and Boll said yes. Perrin avoided eye contact with Scherer, slumped in his chair, and started fidgeting.

Perrin was in his mid-twenties at the time. He had always lived with his mother. He was always in special education classes until he dropped out during his senior year of high school. His intellectual functioning is sub-average. Perrin had worked for many years at TC's Referee restaurant, first as a dishwasher and then a fry cook.

Agent Scherer asked Perrin if they could talk privately in Perrin's bedroom, a short distance away. Perrin said yes and they went. Five to ten minutes had passed since Agent Scherer started talking to the group. Detective Sean Kooistra went to the bedroom too; he searched the room while Agent Scherer questioned Perrin, and left before the questioning ended. After they entered the bedroom, Scherer closed the door but it remained cracked open. Agent Scherer did not repeat his earlier admonitions about Perrin being free to leave or not answer questions.

Agent Scherer questioned Perrin for about ten minutes. His side arm was visible, but he had removed his protective vest. He did not touch or threaten Perrin, make any promises, or raise his voice. The Agent did not perceive that Perrin had any trouble understanding or answering questions about internet use and child pornography. Though neither Perrin nor the officers testified at the suppression hearing about the specifics of the questions and the answers, Agent Scherer's report was admitted without objection and it summarized Perrin's admissions.

At the end of the bedroom questioning, Agent Scherer and Perrin returned to the living room. There were conversations between Perrin and his mother, some of which included Agent Scherer. The search ended an hour and a half or so after it began. Agent Scherer did not arrest Perrin after the bedroom questioning or when the officers left the home.

**3.** Considering the totality of the circumstances, we hold that Perrin was not in custody when Agent Scherer questioned him in Perrin's bedroom. Most importantly, about ten minutes beforehand, Agent Scherer had told Perrin and the three other residents present that they could leave and did not have to answer questions if they stayed. We have long regarded these admonitions as weighty in the custody analysis. *E.g.*, *Griffin*, 922 F.2d at 1349–50. And we have never held that a person was in custody after receiving them. *Czichray*, 378 F.3d at 826. Perrin argues that Agent Scherer should have told him again, and individually, before starting the bedroom questioning. We disagree. The ten-minute distance between the two events undermines Perrin's argument. While we may some day confront a case where the distance between warning and questioning, in the totality of the circumstances, puts the efficacy of an officer's original no-custody statements in doubt, this is not that case.

Beyond the clear ground rules that started Agent Scherer's questioning, other circumstances indicate that Perrin was not in custody in his bedroom. He volunteered to go there. The questioning lasted about ten minutes. The bedroom, like the house, was police dominated, as the District Court found. A reasonable person would have taken some comfort, however, in being in his own bedroom instead of an interrogation room at the police station. *Compare Czichray*, 378 F.3d at 826–27, *with Griffin*, 922 F.2d at 1355 n.15. The bedroom door was almost closed; but a cracked bedroom door presents a different obstacle than a closed storage-room door blocked by a police officer. *Compare United States v. Craighead*, 539 F.3d 1073, 1086 (9th Cir. 2008). Neither Officer Kooistra nor Agent Scherer prevented Perrin from exercising his right to leave—they did not physically restrain him, and nothing of record suggests that they positioned themselves or acted to inhibit Perrin's exit.

Against all this, Perrin stresses two points: the overwhelming police presence and his sub-average intelligence. Neither point is disputed. But considering all the

circumstances surrounding the interrogation, which we must do, the many officers present and Perrin's mental deficits do not establish custody. We have held that circumstances more dominated by police were not custodial. *E.g.*, *Czichray*, 378 F.3d at 825, 830; *LeBrun*, 363 F.3d at 718, 724. Any warrant search is inherently police dominated; there is nothing untoward about that circumstance. Perrin's mental-deficits argument fails on the facts. Agent Scherer testified that Perrin neither appeared to have any difficulty responding to the questions in the bedroom nor exhibited any unusual intellectual deficit. Because Perrin has not crossed the factual threshold, we need not consider this issue further on the law. *United States v. Galceran*, 301 F.3d 927, 929, 931 (8th Cir. 2002) (*per curiam*) (analyzing the issue as a matter of voluntariness); *see also United States v. Little*, 18 F.3d 1499, 1505 (10th Cir. 1994) (*en banc*) (reiterating objective nature of the inquiry).

Having considered the totality of the surrounding circumstances *de novo*, we hold that Perrin was not in custody during the ten minutes of voluntary questioning in his bedroom. A reasonable person in his position would have felt at liberty not to answer Agent Scherer's questions or leave or both, just as Agent Scherer advised Perrin and his housemates they could do before he asked any questions. No *Miranda* warnings were required. We therefore affirm the judgment.

Affirmed.

_____