# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1964

_____

United States of America,                      *
                                               *
        Plaintiff-Appellee,                    *
                                               *   Appeal from the United States
v.                                             *   District Court for the
                                               *   District of North Dakota.
Ray Leon Huether,                              *
                                               *
        Defendant-Appellant.                   *

_____

Submitted: December 16, 2011
Filed:  March 9, 2012

_____

Before LOKEN, BRIGHT, and SHEPHERD, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Ray Leon Huether was convicted by a jury and sentenced to 240 months' (20 years') imprisonment for receipt of materials involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2) and 2252(b)(1), and 120 months' (10 years') imprisonment for possession of materials involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(4)(B) and 2252(b)(2), both sentences to run consecutive to each other and to his 30-year state court sentence.[1]  Before trial,

_____

[1]Huether was charged in the District Court of Ward County, Minot, North Dakota, with gross sexual imposition and possession of child pornography.  The jury found Huether guilty of gross sexual imposition and the court sentenced him to 40

Huether filed a motion to suppress statements made during a search of his Fargo residence. Huether now appeals the district court's[2] denial of his motion to suppress and its judgment entered against him. In his appeal, Huether contends the district court: (1) erred by entering convictions on both a greater offense and a lesser included offense contrary to the Double Jeopardy Clause, (2) committed plain error by admitting testimony contrary to the Confrontation Clause, (3) erred by allowing a police officer to give testimony that usurped the jury's function, and (4) erred by failing to suppress un-Mirandized statements. We affirm in part, reverse in part, and remand.

## I.    BACKGROUND

After receiving a complaint from Huether's then-girlfriend (hereinafter "CT") alleging her daughter had been sexually abused by Huether, the Minot Police Department executed a search of Huether's residence. At the time of the search, Huether had moved to Fargo, but still retained ownership of the Minot residence, often returning on the weekends. In the search, police seized various computer equipment and optical computer discs. An examination of the equipment and computer discs revealed child pornography stored in about 90 hours of video, and 257 images, 50 of which appeared to be duplicates.

After the Minot search, six law enforcement officers, including Sergeant David Goodman of the Minot Police Department and officials from the Fargo Police

---

years' imprisonment, with 10 years suspended. The state dismissed the child pornography charges. At the time of sentencing, Huether, age 43, would likely be imprisoned for the rest of his life. He does not challenge the federal sentences as excessive, but only challenges them as to an alleged violation of double jeopardy, discussed *infra* at page 12.

[2]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

Department and the North Dakota Bureau of Criminal Investigation ("NDBCI"), executed a search warrant at the Fargo residence Huether shared with his girlfriend. The officers arrived at the Fargo residence at 7:45 a.m. on August 8, 2008. Upon finding Huether in bed, Goodman informed Huether that the officers were there to look for pictures and video of CT's daughter, and that he was not under arrest or in custody. Huether signed the warrant, consenting to a search of the residence. Officer Goodman then asked Huether if he would answer some questions, and again told him he was not under arrest or in custody. According to Officer Goodman's written police report, he also told Huether that he was free to leave; although Huether later testified at his state court trial that he did not remember being told he was free to leave. About thirty minutes into the interview, one of the other officers entered the room, at which time Officer Goodman began recording the interview. Huether was not restrained during the interview; although he testified that Officer Goodman was blocking the bedroom door, the room's only exit.

The interview lasted approximately two hours, during which time Huether made incriminating statements about his sexual abuse of C.T.'s child, and in addition, about the child pornography discovered during the Minot search. About ninety minutes into the interview, Officer Goodman stated to Huether, "we've got two officers from the Minot Police Department, two from the Fargo Police Department, and two from [NDBCI]. One of the officers from the [NDBCI] is . . . is ou[r] computer forensic specialist. So he's here to assist with the computer part of it." Officer Goodman arrested Huether after the interview and the search concluded. Huether was not given *Miranda* warnings prior to, or at any point during, his interview with Officer Goodman.

Thereafter, a federal grand jury charged Huether with receipt of materials involving the sexual exploitation of a minor, in violation of 18 U.S.C. § 2252(a)(2) and 2252(b)(1) ("Count One"), and possession of materials involving the sexual exploitation of a minor, in violation of 18 U.S.C. § 2252(a)(4)(B) and 2252(b)(2)

("Count Two"). Before trial, Huether filed a motion to suppress all of his statements from the Fargo search. The district court denied Huether's motion.

At trial, the government presented testimony from Special Agents Timothy Erickson, an NDBCI computer forensic specialist, and Randy Helderop with Homeland Security Investigations. Agent Erickson had ten years of experience working under NDBCI's Internet Crimes Against Children Task Force (ICACTF) and was present at both the Minot and Fargo searches. He conducted a forensic examination of the hard drives and compact discs seized during the Minot search. Using the NDBCI's file server, he analyzed the files to determine known and unknown child victims of sexual exploitation. He then sent the files to the National Center for Missing and Exploited Children (NCMEC), as mandated by NDBCI. Agent Helderop was responsible for determining whether the charged offenses had an interstate nexus and testified that the labels affixed to the hard drives showed they were manufactured abroad.

As previously stated, the jury found Huether guilty on both counts and the district court sentenced Huether to 240 months' (20 years') imprisonment for Count One and 120 months' (10 years') imprisonment for Count Two, both sentences to run consecutive to each other and to his 30-year state court sentence. Huether now appeals the district court's denial of his motion to suppress and the judgment entered against him.

## II.    DISCUSSION

### A.    *Miranda*

Huether contends the district court erred in denying his motion to suppress the recorded statements made during the Fargo search. When reviewing the denial of a motion to suppress, we review "the district court's factual findings for clear error and

its conclusions of law *de novo*." United States v. Muhlenbruch, 634 F.3d 987, 995 (8th Cir. 2011).

The Fifth Amendment dictates that Miranda warnings be given when "interrogation is 'initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" Id. (quoting Miranda v. Arizona, 384 U.S. 436, 444 (1966)) (citation omitted). To determine whether a defendant was in custody for Miranda purposes, a court looks to the totality of the circumstances confronting the defendant at the time of the interview, and asks "whether a reasonable person in his position would consider his freedom of movement restricted to the degree associated with formal arrest." United States v. Flores-Sandoval, 474 F.3d 1142, 1146 (8th Cir. 2007) (quotation omitted). The inquiry is an objective one, without consideration of the participants' subjective views. Id. (quotation omitted). The following non-exclusive factors inform the custody inquiry:

(1)  whether the suspect was informed that he was free to leave and that answering was voluntary;
(2)  whether the suspect possessed freedom of movement;
(3)  whether the suspect initiated contact or voluntarily acquiesced;
(4)  whether strong arm tactics or strategies were employed;
(5)  whether the atmosphere was police dominated; or,
(6)  whether the suspect was placed under arrest at the end of questioning.

Muhlenbruch, 634 F.3d at 996. "The first three . . . factors which, if present, mitigate against the existence of custody . . . the last three . . . are aggravating factors which, if present, aggravate the existence of custody." United States v. Axsom, 289 F.3d 496, 500-01 (8th Cir. 2002).

The record establishes that the first, third and sixth factors were present. Officer Goodman advised Huether, at least twice, that he was not under arrest or in

-5-

custody. It is undisputed that when Officer Goodman and the other officers initiated contact with Huether, he did not ask to leave, refuse to answer, or request anything during the interview, despite being told that he was not under arrest or in custody. Indeed, Officer Goodman did not decide to arrest Huether until after the interview.

The record shows Huether freely answering Officer Goodman's questions regarding the allegations of child sexual abuse, and receipt and possession of child pornography. In fact, Huether became more responsive in answering Officer Goodman's questions as the interview progressed. He also cooperated with the officers in providing access to his laptop.

Huether claims Officer Goodman made a verbal showing of force–telling Huether about the officers participating in the search, including a computer forensic specialist. Huether claims that the interview then became custodial, in violation of his Fifth Amendment rights. However, when Huether signed the search warrant, which listed the officers' names, he became aware of the number of officers present. Huether also has prior experience with law enforcement—he was arrested after being questioned by law enforcement in Montana. At a minimum, these factors show that Huether is no stranger to being interviewed by law enforcement and that he voluntarily chose to be cooperative.

Further, this court's recent decision in Unites States v. Perrin, 659 F.3d 718 (8th Cir. 2011), indicates that more than what is in the record here reviewed is required for a determination that Huether was in custody for Miranda purposes. A federal officer, one of at least six in tactical gear who entered the house with a search warrant for child pornography, interviewed Perrin in his bedroom. Id. at 720. Before taking Perrin to the bedroom, the officer told Perrin he was free to leave and that he did not have to answer any questions, to which Perrin indicated that he understood. Id. The officer nearly closed the bedroom door, leaving it slightly open, enabling another officer to enter the bedroom to conduct a search during the interview. Id. No

-6-

officers restrained Perrin or positioned themselves so as to inhibit his exit. Id. at 721. Like Officer Goodman, the officer there did not raise his voice or threaten Perrin; and like Perrin, Huether had no trouble "understanding or answering questions about internet use and child pornography." Id. at 720. The circumstances were such that Perrin would have considered himself free not to answer the officer's questions and leave the premises, and therefore not in custody when he confessed to possessing child pornography. Id. at 721.

Perrin reiterates that this court has held "circumstances more dominated by police were not custodial." Id. (citing United States v. Czichray, 378 F.3d 822, 825, 830 (8th Cir. 2004) (holding that a chiropractor was not in custody for Miranda purposes despite an "ensuing interview[] which lasted nearly seven hours"); United States v. LeBrun, 363 F.3d 715, 721 (8th Cir. 2004) (holding that defendant was not in custody when he gave inculpatory statements in a windowless room with enlarged photographs on the wall as a deceptive interview tactic and where the officers "falsely trumped up the evidence they said they possessed.").

We affirm the district court's judgment. The record here supports the district court's decision declining to suppress the evidence. Moreover, the record shows that Huether, without hesitation, answered the questions relating to the materials in his computer.

## B.    Confrontation Clause

Huether contends the district court erred in admitting testimony from Agent Erickson, which repeated the conclusions of a report prepared by those at NCMEC, and testimony from Agent Helderop concerning the hard drives' and compact discs' origin. Huether did not raise this issue in the district court; accordingly, we review the district court's ruling for plain error. United States v. Olano, 507 U.S. 725, 736 (1993). To establish plain error, Huether must show an error that is plain and that

affects his substantial rights. United States v. Mireles, 617 F.3d 1009, 1012 (8th Cir. 2010). But even where plain error is found, Huether will not automatically prevail as we will remedy the error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Robertson, 606 F.3d 943, 50 (8th Cir. 2010) (quoting United States v. Olano, 507 U.S. 725, 736 (1993)).

Huether's Confrontation Clause arguments rely mainly on Bullcoming v. New Mexico, 131 S. Ct. 2705, 2716 (2011) (holding defendant had right to confront analyst who certified blood-alcohol report) and Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527, 2532 (2009) (holding forensic laboratory expert's statement that substance was cocaine is testimonial for Sixth Amendment Confrontation Clause purposes). According to Huether, Agents Erickson's and Helderop's testimony improperly allowed the government to prove the jurisdictional element of Counts One and Two—that the images were of individuals from outside North Dakota and transported to North Dakota via the internet, and that the hard drives and compact discs were manufactured outside North Dakota—by repeating conclusions of non-testifying persons. Huether's reliance is misplaced.

Bullcoming established that an out-of-court statement "may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness." 131 S. Ct. at 2713. That case did not address expert testimony based on independent knowledge of the evidence, as is the case here. Evidence of the images' origin came from Agent Erickson's testimony based on his training, ten years of experience, and use of NDBCI's file server to identify the images. The files were then sent to NCMEC as mandated by NDBCI. The NCMEC report was not offered as evidence at trial and not necessary to prove the jurisdictional element of the offense. But see Melendez-Diaz, 129 S. Ct. at 2540 (affidavits were "prepared specifically for use at petitioner's trial.")

Agent Helderop testified that the labels affixed to the hard drives showed they were manufactured outside the United States. He also testified to a conversation with personnel at Maxell, the CDs' distributor, in completing his analysis of the materials. But an examination of the labels alone showed the interstate transportation of the hard drives. Thus, this evidence undermines Huether's contention that Agent Helderop's testimony violated the Confrontation Clause. See United States v. Koch, 625 F.3d 470, 480 (8th Cir. 2010) (holding that district court did not abuse its discretion in admitting testimony that defendant's computer and flash drive were labeled as having been manufactured abroad to prove interstate commerce element).

Therefore, the district court did not err in admitting Agents Erickson's and Helderop's testimony.

## C. Expert Testimony

Huether also contends the district court violated Fed. R. Evid. 702 and 704 when it permitted Agent Erickson to testify that he believed Huether put the child pornography on the hard drives. Huether argues the testimony also improperly vouched for CT's credibility while embracing an ultimate issue. "We review the evidentiary rulings of a district court only for abuses of discretion, and will reverse only when an improper evidentiary ruling affects the substantial rights of the defendant . . . ." United States v. Yarrington, 634 F.3d 440, 447 (8th Cir. 2011) (quotation omitted). "We will not reverse if the error was harmless." Id. (quotation omitted).

FED. R. EVID. 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

"In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense . . . ." FED. R. EVID. 704. But generally, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Id. To determine whether Huether received the images via interstate commerce, the jury had to accept that file features found on the computers seized from the Minot search and on Huether's laptop in Fargo matched those on the internet. Because knowledge of computers and internet use differ widely among lay jurors, Agent Erickson's testimony appropriately helped better understand the evidence. See United States v. Davis, 457 F.3d 817, 824 (8th Cir 2006) ("Expert testimony is appropriate when it relates to issues that are beyond the ken of people of ordinary intelligence.") His testimony assisted the jury in processing information relating to whether Huether downloaded and saved the images and videos to his hard drives.

Further, it is undisputed that Agent Erickson had specialized knowledge based on his ten years of experience working as a member or coordinator for the ICACTF. He knew Huether had access to computers in Minot and Fargo at all relevant times, and that Huether admitted to moving the downloaded images to folders and hard drives. He participated in the investigation and was present during both the Minot and Fargo searches. He personally performed computer analysis on Huether's computers and equipment seized at both residences.

-10-

The district court instructed the jury on how to consider expert testimony and how to draw inferences. It further instructed that the jury alone could determine whether the images of child pornography had been received over the internet. And like testimony from other witnesses, the jury—as trier of fact—was free to reject Agent Erickson's opinion.

Huether would also have us interpret Agent Erickson's testimony as bolstering CT's testimony that no one else came to the Minot residence after Huether moved out, and therefore no one else could have placed the images on the hard drives. When asked whether he had an opinion about who may have put the images on the CDs, Agent Erickson responded, "Yes." Over Huether's objection, the district court permitted Agent Erickson to testify, "[b]ased on the detailed file structure and the way that they were consistent among all the computers that we discovered child porn . . . the only person that was at both residences was Ray Huether." Contrary to Huether's contention, "[t]he use of opinions is not abolished by . . . rule [702], however. It will continue to be permissible for . . . experts to take the further step of suggesting the inference which should be drawn from applying the specialized knowledge to the facts." FED. R. EVID. 702 advisory comm. notes, 1972 Proposed Rules; see also FED. R. EVID. 703 and 705.

Even if we agree with Huether that allowing this statement into evidence invades the jury's province as the trier of fact, the error is a harmless one. The jury received evidence in the form of Huether's own statements during Officer Goodman's interview with Huether that he moved the images from one folder to another in the hard drives and later put them on compact discs. Therefore, the district court did not abuse its discretion in admitting this questioned evidence and we will not reverse its ruling on this issue.

**D.** **Double Jeopardy Clause**

Finally, Huether contends that his convictions and separate sentences for both receipt and possession violate the Fifth Amendment's Double Jeopardy Clause. Because Huether did not raise a double jeopardy defense in the district court, we review his claim for plain error. FED. R. CRIM. P. 52(b); United States v. Sickinger, 179 F.3d 1091, 1092-93 (8th Cir. 1999).

To prevail under a double jeopardy claim, Huether must first show that he was convicted of "two offenses that are in law and fact the same." United States v. Muhlenbruch, 634 F.3d at 1002 (finding defendant's receipt and possession convictions were based on the same conduct, such that the district court's error in entering judgment against him on both counts was plain, and the error affected his substantial rights) (quotation omitted). The parties do not dispute that a § 2252(a)(4)(B) possession offense is a lesser included offense to the § 2252(a)(2) receipt offense under the law. See id. The issue then is whether Huether's convictions were based on the same facts.

While the government is not prohibited from charging Huether with both a greater and lesser offense, the jury must be instructed that they cannot convict him for both offenses based on the same facts. United States v. Dixon, 507 F.2d 683, 684 (8th Cir. 1974). They must be tasked with separating the evidence in considering the counts separately, and instructed that they may not convict Huether of both counts based on overlapping evidence. See id. Such an instruction should not be hidden from the jury.

Relevant to our inquiry are jury instructions F-3, F-4, and F-5. Jury instruction F-3 reads, in relevant part:

-12-

Each alleged offense, and the evidence pertaining to it, must be considered separately. The fact that you may find the Defendant not guilty or guilty as to one of the offenses charged should not control your verdict as to the other offense charged. You must base your verdict on each count solely on the evidence presented relevant to that count.

Jury instructions F-4 and F-5 go on to set forth the elements of receipt and possession, respectively, with the only distinction being use of the word "receipt" or "possession."

The district court did not instruct the jury that they may not convict Huether of both receipt and possession based on the same facts. At most, jury instruction F-3 directed the jury to consider Count One and Count Two separately. Without more, the jury could have very well convicted Huether of receiving the same images that he was also found to have possessed.

The evidence also did not specify which images Huether was charged with receiving and which he was charged with possessing. During trial, the government spoke of Huether's conduct collectively, making no distinction as to which images he was found to have received or possessed; leaving that task for the jury to perform. Similarly, the indictment states that "[f]rom an unknown time until about August 2008," Huether knowingly received (Count One) or possessed (Count Two) "visual depictions involv[ing] the use of minors engaging in sexually explicit conduct." Indeed, the language set forth under Counts One and Two charged Huether with receiving and possessing child pornographic images during the same time period, namely sometime until August of 2008, without reference to distinct acts of receipt or possession on different dates or at different times. Thus, failure to properly instruct the jury was plain error. See Muhlenbruch, 634 F.3d at 1004.

Huether's sentences run consecutive to his 30-year state court sentence. Thus, the error substantially affects his rights under the Fifth Amendment. Simply put,

Huether received a longer prison term than he would have without the error. See id. at 1004. We therefore determine it proper to have the district court vacate one of Huether's convictions.

## III.  CONCLUSION

We affirm in part, reverse in part, and remand with instruction for the district court to vacate one of Huether's convictions and the sentence imposed thereon.

_____