# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3294

_____

United States of America

*Plaintiff - Appellee*

v.

Craig Kendall Giboney

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 5, 2017
Filed: July 21, 2017

_____

Before SMITH, Chief Judge, ARNOLD and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Craig Giboney pled guilty to transporting, receiving, and possessing child pornography in violation of 18 U.S.C. § 2252A(a)(1), (a)(2), and (a)(5)(B). The guilty plea was entered under Federal Rule of Criminal Procedure 11(a)(2), reserving

Giboney's right to appeal the district court's[1] order dismissing his previously filed (1) motion to suppress his pre- and post-arrest statements to law enforcement, and (2) pro se motion to dismiss the indictment. Giboney now appeals that order and, for the reasons discussed below, we affirm.

I.

*FBI Investigation of GigaTribe*

In January 2015, FBI Special Agent Kevin Matthews was working undercover to investigate the sexual exploitation of children on the website GigaTribe. GigaTribe is a peer-to-peer online forum for sharing videos, images, and music files. A GigaTribe user can create a private network which the user controls by inviting "friends" to join. Once a friend accepts an invitation to join the user's network, both users can browse and download files from each other's shared folders. Additionally, any GigaTribe user can create a "tribe" of users to share files with or to find other users that have similar interests.

On the morning of January 8, 2015, Agent Matthews was logged into GigaTribe from an undercover account with the username "Pedocchio." While posing as Pedocchio, Agent Matthews observed a tribe called "Boytoys," which described itself as a tribe "[a]ll about the boys, young vids, pics, BIBCAMs."[2] Among the 551 users in the Boytoys tribe was "Jizzlobber11." Agent Matthews,

--------

[1]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri, adopting the report and recommendation of the Honorable Shirley P. Mensah, United States Magistrate Judge for the Eastern District of Missouri.

[2]"BIB" stands for "boys in bedroom" and "BIBCAM" typically indicates webcam videos of young boys.

acting as Pedocchio, invited Jizzlobber11 and other members of Boytoys to join his private network. Jizzlobber11 accepted, thereby granting Pedocchio access to Jizzlobber11's shared files. Agent Matthews downloaded 73 files directly from Jizzlobber11. These files contained images and videos depicting minor children engaged in lascivious displays of their genitals or involved in sexual acts.

Agent Matthews was able to determine the IP address utilized by Jizzlobber11 and, after further investigation, traced the IP address to a residence in St. Charles, Missouri. Police obtained a search warrant for that residence and, on February 26, 2015, six officers arrived at the residence to execute the warrant. Several individuals occupied the house, including Giboney, who was found asleep on a couch in the basement. The officers woke Giboney and escorted him upstairs to join the other occupants in the garage. The officers then seized media equipment from the basement including a laptop (which was found on a table in front of the couch where Giboney was sleeping), two thumb drives, two cell phones, and one external hard drive.

*Giboney's Pre-Arrest Statements*

While the other officers executed the search warrant, Detective Jacob Walk with the Missouri Internet Crimes Against Children Task Force conducted an audio-recorded interview of Giboney in the living room of the residence. Detective Walk advised Giboney repeatedly during the interview that he was not under arrest and was free to leave. Giboney was not placed in handcuffs or otherwise physically restrained, and no weapon was drawn against him. Detective Walk was the only officer questioning Giboney during the interview, although another officer, Sergeant Chris Bosley, interrupted at one point to ask Giboney for the username and password of the laptop in the basement. Giboney provided the information, allowing Sergeant Bosley to log into the laptop and view its content.

While Detective Walk interviewed Giboney, officers learned that the laptop's IP address matched the IP address captured during Agent Matthews's undercover activity on GigaTribe. Sergeant Bosley informed Detective Walk of the match, which suggested to Detective Walk that the basement laptop was the computer that had been sharing videos and images of child pornography on GigaTribe. Detective Walk decided to Mirandize[3] Giboney at that time but, before he could do so, Giboney asked to use the restroom. After confirming with other officers that the restroom had been cleared, Detective Walk informed Giboney that (1) Detective Walk had to accompany Giboney to the restroom because a search warrant was being executed, (2) Giboney could not walk freely around the house, and (3) Detective Walk was not finished questioning Giboney but it was Giboney's decision whether to continue the interview.

After using the restroom, Giboney stated that he wanted to go outside to smoke a cigarette. Detective Walk accompanied Giboney to the garage, where he confirmed that Giboney was still willing to talk to him. Detective Walk then advised Giboney that he had developed new information and wanted to read Giboney his rights before asking more questions. Giboney stated that if he was going to be arrested, he would "take off" and Detective Walk would "have to come get [him]." Detective Walk replied, "I'm not saying I'm going to arrest you; I was just wanting to know . . . if you wanted to talk." Giboney then began walking down the street. Detective Walk and two other officers followed Giboney and took him into custody after informing Giboney that he was under arrest.

*Giboney's Post-Arrest Statements*

At the police station, Detective Walk conducted a video-recorded interview of Giboney. No lawyers were present. Detective Walk began by reading Giboney his Miranda rights from a form titled "Your Constitutional Rights." Giboney initialed

---

[3]Miranda v. Arizona, 384 U.S. 436 (1966).

each right after Detective Walk read the right to him out loud. Giboney also verbally acknowledged that he understood each right as it was read to him. When Detective Walk asked whether Giboney understood his right to talk to a lawyer before the interview and to have one present during the interview, Giboney jokingly asked "[s]o does it stop now if I want to get an attorney?" Detective Walk responded, "[I]f at any time you want to stop, man, just tell me and we'll stop."

Detective Walk then asked Giboney to read the section of the form titled "Waiver" out loud. Giboney complied but stated that he would not initial the waiver because the waiver stated "I do not want a lawyer at this time." Seeking clarification, Detective Walk asked, "[A]re you saying that you don't want to talk to me without an attorney?" Giboney responded, "No, that's not what I'm saying. I'm saying I do want a lawyer and that's saying I do not want a lawyer. . . . And that's why I do not want to initial that because I do want an attorney if I'm going to be charged with this." Seeking further clarification, Detective Walk asked, "So you want an attorney with you during questioning here. Is that what you're saying? . . . So are you saying that you want a lawyer *at this time*?" (emphasis added). Giboney then replied, "Oh, *at this time*. Alright. . . . Sorry." (emphasis added). Giboney then initialed the waiver section of the form, and Detective Walk asked, "[W]ith this waiver in mind, do you want to talk to me?" Giboney replied, "I'll talk to you." The interview proceeded and, though he denied any wrongdoing at first, Giboney ultimately admitted that he had been viewing child pornography for fifteen years.

*Guilty Plea and Sentencing*

In March 2015, a federal grand jury returned a two-count indictment charging Giboney with receipt and possession of child pornography, 18 U.S.C. § 2252A(a)(2), (a)(5)(B). A superseding indictment was later returned adding a charge of transportation of child pornography, 18 U.S.C. § 2252A(a)(1). Giboney filed a pro se motion to dismiss the indictment for lack of jurisdiction. Through counsel,

Giboney also filed a motion to suppress his pre- and post-arrest statements to Detective Walk. The district court denied both motions.

On April 22, 2016—three days before his scheduled trial—Giboney pled guilty to the three charges in the superseding indictment, reserving his right to this appeal. See Fed. R. Crim. P. 11(a)(2). The district court accepted the plea and sentenced Giboney to thirteen years in prison followed by a lifetime of supervised release.

II.

Giboney appeals the district court's denial of his pro se motion to dismiss the indictment for lack of jurisdiction. According to Giboney, the federal child pornography statutes were unconstitutionally applied in this case because the child pornography at issue was transmitted over the internet and thus did not physically cross state lines. Without citing legal authority, Giboney argues that "Congress does not have the power under the Commerce Clause to punish those who possess child pornography when the pornography has not crossed state lines."

Giboney's contention has no merit. The Commerce Clause confers regulatory authority over the channels and instrumentalities of interstate commerce. E.g., United States v. Morrison, 529 U.S. 598, 609 (2000) (citing United States v. Lopez, 514 U.S. 549, 558 (1995)). "The [i]nternet is an instrumentality and channel of interstate commerce." United States v. Havlik, 710 F.3d 818, 824 (8th Cir. 2013). Giboney does not dispute that he used the internet to receive, possess, and transport child pornography. In doing so Giboney participated in "a system that is inexorably intertwined with interstate commerce and thus properly within the realm of Congress's Commerce Clause power." United States v. Trotter, 478 F.3d 918, 921 (8th Cir. 2007) (per curiam) (internal quotation marks omitted). Accordingly, Giboney's Commerce Clause argument fails. The district court's denial of the pro se motion to dismiss the indictment is affirmed.

## III.

Giboney also appeals the district court's denial of his motion to suppress statements he made to law enforcement before and after his arrest. We review the factual findings of the district court for clear error and its legal findings de novo. United States v. Scott, 732 F.3d 910, 916 (8th Cir. 2013). "We will affirm the denial of a suppression motion unless we find that the decision is unsupported by the evidence, based on an erroneous view of the law, or the [c]ourt is left with a firm conviction that a mistake has been made." United States v. Donnelly, 475 F.3d 946, 951 (8th Cir. 2007) (internal quotation marks omitted).

### A. Pre-Arrest Statements

Giboney first argues that his pre-arrest statements should be suppressed because Detective Walk extracted those statements without advising Giboney of his Miranda rights. The Fifth Amendment requires that Miranda warnings be given when a person is interrogated by law enforcement after being taken into custody. United States v. Huether, 673 F.3d 789, 794 (8th Cir. 2012). As there is no uncertainty that Giboney was interrogated by Detective Walk at Giboney's residence, the only issue is whether the interrogation was custodial.

"The ultimate question in determining whether a person is in 'custody' for purposes of Miranda is 'whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.'" United States v. Czichray, 378 F.3d 822, 826 (8th Cir. 2004) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam)). This determination is not based on the interrogator's perspective; "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984).

Six factors inform our analysis, although the factors are not exhaustive and need not be applied "ritualistically" in every case. Czichray, 378 F.3d at 827. The first three factors, which if present tend to show that Giboney was not in custody, are:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; [and] (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions.

United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990). The remaining factors, if present, favor a finding that Giboney was in custody during the interrogation. Id. Those factors are: "(4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; [and] (6) whether the suspect was placed under arrest at the termination of the questioning." Id.

The first factor is present and weighs heavily against a finding that Giboney was in custody. Detective Walk repeatedly informed Giboney during the interview that he was not under arrest, could end the interview whenever he wanted, and was free to leave. Giboney confirmed his understanding with responses such as "Ok" and "That's fine." As the court in Czichray explained, "That a person is told repeatedly that he is free to terminate an interview is powerful evidence that a reasonable person would have understood that he was free to terminate the interview." 378 F.3d at 826. "So powerful," the court continued, "that no governing precedent of the Supreme Court or [the Eighth Circuit] . . . holds that a person was in custody after being clearly advised of his freedom to leave or terminate questioning." Id.; see also United States v. Perrin, 659 F.3d 718, 721 (8th Cir. 2011) (stating that the Eighth Circuit has "never

held that a person was in custody after receiving" admonitions from law enforcement that the person was free to leave).

As to the second factor, Giboney argues that his freedom of movement was restrained during questioning because Detective Walk escorted him to the restroom and outside for a smoke. We fail to see how Detective Walk "restrained [Giboney's] freedom of movement to the degree associated with formal arrest" merely by joining Giboney as he moved about and outside the house. See United States v. Laurita, 821 F.3d 1020, 1024 (8th Cir. 2016) (internal quotation marks omitted); see also Czichray, 378 F.3d at 825, 830 (defendant who was accompanied by law enforcement to his bedroom and bathroom during questioning was not in custody for purposes of Miranda). Detective Walk explained to Giboney that he could not "just take off and walk around the house" because of the ongoing execution of the search warrant. Giboney was not handcuffed or otherwise physically restrained from moving around. He did not request to go to the restroom or outside alone and did not object when Detective Walk went with him. Thus we cannot say the district court erred in determining that a reasonable person in Giboney's position would not feel restrained during the interview.

Third, Giboney voluntarily acquiesced to Detective Walk's questioning. When asked at the beginning of the interview if he was "cool" with answering Detective Walk's questions, Giboney replied "That's fine." He also confirmed that he understood that it was his choice whether to respond to the questions. When the two went outside for Giboney to smoke a cigarette, Detective Walk stated, "Craig do you still want to talk to me or no[?]" and Giboney replied, "Oh I'm talking to you." To further secure Giboney's voluntary participation, Detective Walk then stated, "Ok, Ok. You just mentioned downstairs like you know you weren't sure or something, so I just want to make sure that it was still cool to talk to me." Giboney replied, "That's correct." The third factor is therefore present and weighs against a finding that Giboney was in custody.

As to the remaining factors, there is no evidence that officers used "strong arm tactics or deceptive stratagems" while Giboney was being questioned. Griffin, 922 F.2d at 1349. We agree with Giboney that the atmosphere was police dominated. See Perrin, 659 F.3d at 721 ("Any warrant search is inherently police dominated . . . ."). But we have refused to find custody in circumstances where the atmosphere was much more police dominated. See United States v. Sanchez, 676 F.3d 627, 631-32 (8th Cir. 2012) (defendant interviewed by two officers in the DEA's "home turf": a "small, closed interview room" of a courthouse basement); United States v. Boslau, 632 F.3d 422, 424, 428, 429 (8th Cir. 2011) (defendant interviewed by two officers for forty-three minutes at a police station in a "small, windowless interview room, containing only a round table surrounded by four chairs"). And, while we also agree with Giboney that the sixth factor is present—it is not disputed that Giboney was arrested after the interview concluded—this factor alone does not establish that the interview was custodial. See United States v. Flores-Sandoval, 474 F.3d 1142, 1146, 1147 (8th Cir. 2007) (defendant not in custody although he was arrested immediately after being questioned by an ICE agent about his immigration status).

After carefully considering the totality of the circumstances surrounding Giboney's pre-arrest interview, we conclude that the interview was not custodial. Though some factors favoring Giboney are present, as we explained in Czichray:

> Where a suspect is questioned in the familiar surroundings of his home, and informed several times of his right to terminate the interview at will, we believe that strong evidence of restraint on freedom of movement of the degree associated with a formal arrest is necessary to overcome the natural inference that such questioning is non-custodial.

378 F.3d at 830. There is no such evidence of restraint in this case. Accordingly, Detective Walk was not required to advise Giboney of his Miranda rights, and Giboney's statements during the pre-arrest interview need not be suppressed.

## B. Post-Arrest Statements

Giboney next challenges the district court's refusal to suppress his post-arrest statements at the police department. According to Giboney, those statements should be suppressed because the post-arrest interview continued after he invoked his Fifth Amendment right to counsel. We disagree.

"[W]e have consistently held that only a clear and unequivocal request for the assistance of counsel may serve to invoke a defendant's right." United States v. Kelly, 329 F.3d 624, 630 (8th Cir. 2003). While a defendant is not required to "speak with the discrimination of an Oxford don, [the defendant] must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis v. United States, 512 U.S. 452, 459 (1994) (citation omitted) (internal quotation marks omitted). Giboney contends that the following exchanges illustrate that he sufficiently invoked his right to counsel.

> **Detective Walk:** You have the right to talk to a lawyer, for advice, before we ask you any questions and have a lawyer present, with you, during questioning. Do you understand that?
> **Giboney:** Uh huh. So does it stop now if I want to get an attorney?
> **Detective Walk:** If it, [i]f it. Well[.]
> **Giboney:** I'm kidding Jake.
> **Detective Walk:** Well if at any time you want to stop, man, just tell me and we'll stop. Ok[?]
> **Giboney:** Ok.

> **Detective Walk:** Can you read the waiver [of the right to counsel] aloud for me[?]

**Giboney:** I understand what my rights are. . . . I am going to answer questions or make a statement, knowing that I have these rights. I do not want a lawyer at this time. . . .

**Detective Walk:** So initial, if you understand that.

**Giboney:** Um. I'm not going to initial that because it says I do not want a lawyer at this time.

**Detective Walk:** [A]re you saying that you don't want to talk to me without an attorney?

**Giboney:** No, that's not what I'm saying. I'm saying[] I do want a lawyer and that's saying that I do not want a lawyer.

**Detective Walk:** Ok.

**Giboney:** And that's why I do not want to initial that because I do want an attorney if I'm going to be charged with this.

**Detective Walk:** Ok, so this says, . . . I don't want a lawyer at this time. So are you saying that you want a lawyer at this time?

**Giboney:** Oh, at this time. Alright[.]

**Detective Walk:** At this time. Right now[.]

**Giboney:** Sorry. . . .

**Detective Walk:** Fine. Ok, so um, with this waiver in mind, do you want to talk to me?

**Giboney:** I'll talk to you.

We fail to find a "clear and unequivocal" assertion of the right to counsel in Giboney's post-arrest interview with Detective Walk. First, Giboney did not sufficiently invoke the right to counsel by asking whether the interview would end if he wanted an attorney because, by Giboney's express admission, his question was a joke. Second, the remaining discourse between Giboney and Detective Walk does not reasonably show that Giboney wanted counsel present *during the interview*. Rather, Giboney made clear that he only wanted an attorney in the event he was charged with a crime. Once he realized that the waiver applied only during the interview, he apologized for his confusion, stated that he would talk to Detective Walk, and initialed the waiver. Giboney's statements were, at best, ambiguous as to

-12-

whether he desired to have an attorney present for the interview. He therefore failed to sufficiently invoke his right to counsel, and Detective Walk was not required to cease the questioning. See Davis, 512 U.S. at 461-62 ("If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him."). Accordingly, Giboney's statements to Detective Walk—including his admission to viewing child pornography for over a decade—need not be suppressed. See Kelly, 329 F.3d at 630.

## IV. Conclusion

For the reasons discussed herein, we affirm the district court's order denying Giboney's pro se motion to dismiss the indictment and motion to suppress his pre- and post-arrest statements to law enforcement.

_____