# United States Court of Appeals
## For the Eighth Circuit
_____

No. 21-1511
_____

United States of America

*Plaintiff - Appellee*

v.

Mark Fredrick Sandell

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa
_____

Submitted: November 19, 2021
Filed: March 3, 2022
_____

Before COLLOTON, GRASZ, and KOBES, Circuit Judges.
_____

GRASZ, Circuit Judge.

Mark Sandell pled guilty to receiving child pornography in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). Before his plea, Sandell moved to suppress statements made to law enforcement during an in-home interrogation. The district court[1] denied Sandell's motion to suppress. We affirm the district court.

---

[1]The Honorable John A. Jarvey, then Chief Judge, now United States District Judge for the Southern District of Iowa.

# I. Background

Law enforcement obtained a search warrant for a home in Red Oak, Iowa, during an investigation of a peer-to-peer computer file sharing network being used to acquire child pornography. After questioning the residents and searching their home, the officers ruled out the residents of the home as suspects. The officers began to suspect Sandell, a neighbor, after the residents explained that Sandell asked to use their Wi-Fi when he moved into his home so he could access the internet to register his sex offender status.

Officers then went to Sandell's home for questioning. Upon arrival, the officers knocked on Sandell's door, and Sandell answered. The officers identified themselves as law enforcement and instructed Sandell to step outside while they conducted a sweep of the home. Once the officers determined no one else was in the home, the officers asked Sandell where he would like to talk. Sandell told the officers he preferred to speak in his living room. The officers followed Sandell into his living room and explained they were attempting to obtain a search warrant for Sandell's home based on the information from Sandell's neighbors. One officer informed Sandell he was not under arrest and was not obligated to talk to them. Officers also asked Sandell if he would consent to a home search, but Sandell refused.

The conversation continued and the officers again reminded Sandell he was not obligated to speak to them. The officers informed Sandell he was free to leave but they also informed him that if he chose to drive, they would ask for consent to search his vehicle. They further informed Sandell they needed to supervise his movements inside the home to ensure Sandell did not access any weapons or tamper with evidence. Indeed, the officers supervised Sandell while he took his dog out, took his medication, made coffee, used the restroom, and retrieved the phone number of his probation officer from a separate floor of the home.

Sandell made several incriminating statements during his conversation with the officers. Sandell admitted to downloading child pornography recently and that his child pornography collection on his laptop contained a little of "everything." Sandell also voluntarily retrieved and turned over a camera and two thumb drives to the officers. But Sandell refused to discuss the details of his past child pornography conviction. Sandell did, however, comment that given his criminal history, he was likely facing fifteen years of imprisonment. One officer agreed with Sandell's estimated prison time and commented that, at Sandell's age, he would likely spend the rest of his life in prison.

The officers ultimately obtained a search warrant for Sandell's home and collected evidence including Sandell's laptop, thumb drives, and DVDs. Although the officers left after the search without arresting Sandell, he was later charged with distribution, receipt, and possession of child pornography. Sandell unsuccessfully moved to suppress statements made during the interrogation at his home. Sandell then pled guilty to receipt of child pornography but, in his plea agreement, preserved his right to appeal the district court's denial of his motion to suppress.

## II. Analysis

Sandell appeals the district court's denial of his motion to suppress statements made to the officers while in his home. We review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Parker*, 993 F.3d 595, 601 (8th Cir. 2021).

### A. *Miranda* Argument

Sandell first argues the officers violated his *Miranda* rights while questioning him in his home. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "The Fifth Amendment requires that *Miranda* warnings be given when a person is interrogated by law enforcement after being taken into custody." *Parker*, 993 F.3d at 601 (quoting *United States v. Giboney*, 863 F.3d 1022, 1027 (8th Cir. 2017)). Here, the

-3-

government concedes that none of the officers advised Sandell of his *Miranda* rights. The government also agrees that the February 27, 2020, visit by law enforcement at Sandell's residence was an interrogation. Thus, the issue is whether Sandell was in custody during the interrogation.

A person is considered to be in custody for the purposes of *Miranda* warnings when there is a "formal arrest or restraint [on his or her] freedom of movement of the degree associated with formal arrest." *Id.* (quoting *United States v. Williams*, 760 F.3d 811, 814 (8th Cir. 2014). "To determine whether a suspect was in custody, we ask whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave or cause the agents to leave." *Id.* (quoting *United States v. Laurita*, 821 F.3d 1020, 1024 (8th Cir. 2016)). This court considers six non-exhaustive factors when making this determination:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of questioning.

*United States v. Ferguson*, 970 F.3d 895, 901 (8th Cir. 2020) (quoting *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990)).

Here, all six factors weigh in favor of Sandell's not being in custody; thus, the officers did not need to advise Sandell of his *Miranda* rights. First, it is undisputed that officers informed Sandell many times he was not under arrest and was not obligated to speak to the officers. Repetitive reminders that a defendant is free to terminate an interview "is powerful evidence that a reasonable person would have understood that he was free to terminate the interview." *Giboney*, 863 F.3d at 1027–

28 (quoting *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004)); *see also United States v. Perrin*, 659 F.3d 718, 721 (8th Cir. 2011) (noting this court has never held a person was in custody after receiving admonitions from officers that the defendant was free to leave).

Second, Sandell retained his freedom of movement during questioning. Sandell argues his movement was restrained because officers followed him while moving around his house. But we have consistently held police escorts throughout a house do not restrain a defendant's movement to the degree associated with a formal arrest. *See, e.g.*, *Giboney*, 863 F.3d at 1028; *Czichray*, 378 F.3d at 825, 830. Moreover, Sandell was never handcuffed or physically or verbally restrained from moving about. *See Laurita*, 821 F.3d at 1025 (finding that absence of handcuffing or physical or verbal restraint weighed against defendant being in custody). And while Sandell was told his vehicle needed to be searched if he chose to leave in it, this did not restrict his movement during questions or require him to answer questions.

Third, Sandell voluntarily acquiesced to official requests to respond to questions. While the officers initiated the encounter, the record shows that the officers frequently reminded Sandell he was not obligated to speak with them. Yet Sandell continued to converse with the officers—thus acquiescing to their requests to respond to questions. *Compare United States v. Johnson*, 619 F.3d 910, 919 (8th Cir. 2010) (finding a defendant voluntarily acquiesced to police interview in his own home by responding to questioning after police informed him he was free to leave at any time), *with United States v. Ollie*, 442 F.3d 1135, 1138 (8th Cir. 2006) (finding defendant did not voluntarily acquiesce to police questioning where probation officer ordered a defendant to talk to the police chief).

The remaining factors likewise weigh against a custody finding. The officers did not use any strong arm or deceptive tactics. While Sandell argues an officer's mention of the K-9 unit's being on its way was an attempt to strong arm him into making statements, this was hardly a tactic—the K-9 unit arrived at Sandell's

residence and searched the premises. And although Sandell was certainly outnumbered with four officers in his home, we have found custody did not exist in even more police-dominated circumstances. *See, e.g.*, *United States v. Axsom*, 289 F.3d 496, 502 (8th Cir. 2002) (finding a defendant was not in custody when nine agents executed a search warrant and two of those nine agents conducted an interview). Lastly, Sandell was not arrested at the conclusion of the interrogation. Thus, based on the totality of the circumstances, the district court did not err in holding the in-home interrogation was not custodial. As a result, the district court correctly denied Sandell's motion to suppress because the officers were not required to advise Sandell of his *Miranda* rights.

## B. Voluntariness

Sandell next argues his statements made during the in-home interrogation were involuntary. "A statement is involuntary when it is extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. Roberts*, 975 F.3d 709, 718 (8th Cir. 2020). "We determine if a defendant's will has been overborne by examining the totality of the circumstances, including both the conduct of law enforcement in exerting pressure to confess on the defendant and the defendant's ability to resist that pressure." *United States v. Magallon*, 984 F.3d 1263, 1284 (8th Cir. 2021) (quoting *United States v. Brave Heart*, 397 F.3d 1035, 1040 (8th Cir. 2005)). Factors used to make this determination include "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *Id.* (quoting *United States v. Boslau*, 632 F.3d 422, 428 (8th Cir. 2011)).

The totality of circumstances demonstrates that Sandell's will was not overborne at the time he made the challenged statements. There is no evidence Sandell lacked the requisite maturity, education, or mental or physical stamina to understand his rights. Throughout the interview, officers continued to remind Sandell he was not under arrest and was not obligated to talk to them. And while

the officers discussed the potential of a lengthy prison sentence for Sandell, it was Sandell who first raised the topic. Moreover, Sandell admitted he had experience with the criminal justice system suggesting he was familiar with his constitutional rights. *See United States v. Vinton*, 631 F.3d 476, 482 (8th Cir. 2011) ("A history of interaction with the criminal justice system supports an inference that an interviewee is familiar with his constitutional rights and that his statements to the police are voluntary."). Under these facts, the district court did not err in finding Sandell voluntarily made statements to law enforcement.

For the foregoing reasons, we affirm the district court's denial of Sandell's motion to suppress.

_____